566 So.2d 207 (1990)
Ronald Jerry HEMPHILL
v.
STATE of Mississippi.
No. 89-KA-0048.
Supreme Court of Mississippi.
August 8, 1990.
G. Jyles Eaves, Eaves & Eaves, Louisville, for appellant.
Mike C. Moore, Atty. Gen., W. Glenn Watts, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the court:

I. INTRODUCTION
In this case, a lawful search of Ronald Hemphill's residence yielded nearly a kilogram of marijuana, a handgun, and a so-called "drug" scale. Hemphill was arrested and ultimately indicted for possession of marijuana with intent to sell.
In October 1988, at the Winston County Circuit Court, Hemphill was convicted by a jury, sentenced to ten years imprisonment, and fined $3,000. Hemphill appealed and presents three issues which will be addressed individually in the following analysis.

II. ANALYSIS

A. Issue # 1: Did Hemphill Receive a Fair Trial?
Hemphill first contends that he did not receive a fair trial for the following reasons. He believes the circuit judge should not have allowed the State to introduce at trial the marijuana seized from his residence because of a broken "chain of custody" and because of the possibility of "tampering." For support, he explains that the *208 marijuana was not properly sealed in "evidence bags" and, as a consequence, marijuana residue was able to seep through "holes or openings" when the bags were shaken. Hemphill also explains that the marijuana was "handled" by a Mississippi Crime Laboratory analyst, Steve Howard, "who is no longer so employed" and who did not testify at the trial. Hemphill finally explains that the circuit judge should not have refused to direct John Maddox, another analyst, to reveal during testimony why Howard was no longer employed by the crime lab; the judge's refusal was based on "irrelevancy."
In sum, Hemphill seems to infer that: (1) because marijuana residue could seep from the evidence bags in which the "leafy green substance" was placed, and (2) because the marijuana was handled by an analyst who "mysteriously" is "no longer employed by the Mississippi Crime Laboratory" and who did not testify, (3) the chain of custody was broken, "tampering" possibly occurred and, thus, Hemphill did not receive a fair trial.

2. Relevant Law
In Gibson v. State, 503 So.2d 230, 234 (Miss. 1987), this Court opined:
[T]he test for the continuous possession [i.e., "chain of custody"] of evidence is whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence.
See Barnette v. State, 478 So.2d 800, 804 (Miss. 1985); Morris v. State, 436 So.2d 1381, 1388 (Miss. 1983); see also Lambert v. State, 462 So.2d 308, 312 (Miss. 1984); Grady v. State, 274 So.2d 141, 143 (Miss. 1973). "In such matters, the presumption of regularity supports the official acts of public officers," and the burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant. Nix v. State, 276 So.2d 652, 653 (Miss. 1978), quoted in Barnette, 478 So.2d at 804.

3. The Law Applied to the Case
Hemphill failed to meet the burden imposed by law; that is, he failed to produce evidence of a broken chain of custody or of tampering. Instead, the record reveals that the marijuana seized at Hemphill's residence was taken to the Starkville branch of the Mississippi Bureau of Narcotics  where it was "packaged," "sealed," "identified," "initialed," "locked up," and transported to the Mississippi Crime Laboratory in Jackson for storage and testing; this was "standard operating procedure." Upon arrival in Jackson, the sealed evidence was given a case number and an exhibit number; it was then "logged in," "initialed," and placed into an "evidence vault." The marijuana was tested both by Howard (the ex-analyst) and by Maddox (the other analyst). Each time either of the analysts conducted tests: (1) the bags containing the marijuana were "logged out of the vault"; (2) the seals were broken; (3) the marijuana was tested; and (4) the bags were resealed and placed back into the vault. The uncontroverted testimony showed that the "condition" and amount of marijuana presented during the trial was "the same" (with the exception of some molding) as that which was seized from Hemphill's residence.
Hemphill's only support for his contentions regarding a broken chain of custody and tampering (i.e., seeping marijuana and an ex-analyst who did not testify) is at best tenuous and at worst unpersuasive. Admittedly, the seeping of residue is indicative of improper sealing. But how the seeping was, or might have been, prejudicial to Hemphill's receipt of a fair trial was neither enunciated nor hypothesized during the trial or in his brief. And if Hemphill believed that Howard's "mysterious" unemployment status may have had some prejudicial meaning, then discovery or a subpoena (to compel Howard to testify) was the appropriate means to unravelling the "mystery." Notably, after the judge refused to direct Maddox to explain why Howard was no longer employed, Hemphill immediately requested and received from Maddox information regarding Howard's whereabouts  so that he could "subpoena him here." What Hemphill did with this information is unknown. The record reflects that he failed to subpoena *209 Howard and did not request more time to investigate Howard's reasons for being "no longer employed." The record is also devoid of motions, objections, or anything regarding Hemphill's half-hearted pursuit of such information. All this notwithstanding, this Court does feel compelled to digress for a moment and opine that the circuit judge should have required Maddox to reveal why Howard is no longer employed with the Crime Lab, at least in camera, before deciding whether such testimony would have been relevant. In other words, trial judges should become more involved in the pursuit of the "truth." In this case, the judge's failure to become more involved was harmless and does not warrant reversal.
In sum, this is not a "hard" case. The testimony unequivocally evinces an unbroken chain of custody and "there is [no] indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." Gibson v. State, 503 So.2d 230, 234 (Miss. 1987). This Court holds that Hemphill received a fair trial and therefore affirms on the issue.

B. Issue # 2: Did the Circuit Judge Err by Admitting into Evidence the Hand Gun and Scale Without Requiring the State to Prove the Relevancy of These Items?
Hemphill contends that the circuit judge should not have allowed the State to admit into evidence the gun and scale without having to prove relevancy.[1] The State counters: (1) that the gun and scale were found "in close proximity with the [marijuana]"; (2) that weapons and scales are "tools of the drug trade"; and therefore (3) that the gun and scale were relevant to the crime with which Hemphill was charged.
Case law supports the State's argument. See, e.g., Martin v. State, 413 So.2d 730, 733-34 (Miss. 1982) (In cases involving a narcotics charge, "probative weight" of "weapons," "scales," and other "tools of the trade" generally is not "overbalanced by [possible] inflammatory" consequence of admitting these items into evidence.) (citing numerous supportive cases). This Court therefore rejects Hemphill's contention and affirms on this issue.

C. Issue # 3: Did the Circuit Judge Err by Refusing Most of Hemphill's Jury Instructions?
The record indicates that the circuit judge proposed two of its own instructions; the prosecution proposed four; and Hemphill proposed ten. The judge then accepted all proposed instructions  with the exception of nine of Hemphill's. Hemphill contends that the judge's acceptance of its own and the prosecution's instructions and its refusal of his instructions constituted a reversible error. Hemphill does not explain why the judge's decision was erroneous; he merely notes that "[t]o permit a trial judge to join the prosecution, or to disregard the instructions of the attorneys, is a `return to the tyranny of the King's Court.'"
Hemphill's curious logic is rejected for the simple reason that he failed to object to the judge's decision (i.e., to accept its own and the prosecution's instructions and to refuse most of his). In other words, Hemphill's failure constituted a waiver. See Barnett v. State, 563 So.2d 1377 (Miss. 1990) ("A general objection ... is tantamount to no objection."); Watson v. State, 483 So.2d 1326, 1329 (Miss. 1989) ("The issue [is not] preserve[d] on appeal" if no objection to instructions is made.). But this notwithstanding, the judge refused Hemphill's proposed instructions because they were "repetitious" of those which had already been accepted. This Court therefore affirms on this issue.

III. CONCLUSION
For the foregoing reasons, the conviction is upheld.
AFFIRMED.
*210 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Hemphill cited cases which are irrelevant because they all deal with introduction of confiscated items as "proof of a crime other than that alleged in the indictment." In the case sub judice, the State did not introduce the gun and scale as proof of a crime other than that with which Hemphill was charged. Rather, the items were introduced as proof of the crime with which Hemphill was charged.