# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00952-SCT

*JERRY JEROME JACKSON*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/96 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | A. RANDALL HARRIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/5/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/18/98 |

**BEFORE PITTMAN, P.J., McRAE AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

Jerry Jerome Jackson was charged and tried for the crime of possession of cocaine in the First Judicial District of Hinds County. On April 3, 1996, the trial court, upon motion of Jackson's lawyer, ordered a mistrial due to a conflict of interest in the Hinds County Public Defender's Office. On July 22, 1996, Jackson was found guilty by a jury in the Circuit Court of the First Judicial District of Hinds County, in Cause No. 96-1-248, of the crime of possession of cocaine with intent to distribute.

On August 6, 1996, the court, Honorable William F. Coleman, Circuit Judge, presiding, having entered judgment of conviction on the verdict, adjudicated Jackson as an habitual offender pursuant to Miss. Code Ann. § 99-19-83 (1994), and sentenced him to a term of life imprisonment without parole. It is from the proceedings below that Jackson brings this matter before this Court on appeal raising the following:

**I. WHETHER THE TRIAL COURT ERRED IN ITS RULINGS ON THE ADMISSIBILITY OF ANY ITEMS OF PHYSICAL EVIDENCE, AND IF SO, DID ITS INTRODUCTION PREJUDICE JACKSON?**

**II. WHETHER THE TRIAL COURT WAS BARRED BY THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE III SECTION 22 OF THE MISSISSIPPI CONSTITUTION?**

**III. WHETHER THE TRIAL COURT ERRED IN FAILING TO DISMISS THIS PROSECUTION FOR A VIOLATION OF THE STATUTORY RIGHT TO A SPEEDY TRIAL?**

**IV. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

## STATEMENT OF THE FACTS

On July 26, 1994, a team of plainclothes narcotics officers of the Jackson Police Department, headed by Officer Calvin Matthews, was patrolling in several unmarked vehicles in the area of the 2600 block of Meadows Street, which was one of the areas the team had identified as known drug locations in the city of Jackson.

Officer Matthews, who was riding as the passenger in the lead vehicle, observed a Nissan 280 ZX parked on the wrong side of the street, with its driver-side door open and its engine running. The car was in front of the house at 2617 Meadows Street. Matthews decided to stop to investigate, to determine whether the car was stolen or as to why the driver had left it running with the door open in such a high-crime area. As his vehicle was slowing to a stop, Matthews observed a subject, later identified as Jackson, stepping into the doorway of the house at 2617 Meadows Street.

Matthews saw Jackson drop a chrome weighing scale and, as he came towards the house he saw Jackson toss, by a flip of his hand, a plastic bag into the house. Matthews saw the plastic bag leave Jackson's hand, saw it go through the air, and saw it land on the floor. Three other people were inside the house. One of these was Earl Dunson, who was known by Matthews to be the owner or occupant of the house. Matthews obtained permission to enter the house, and inside the house he retrieved the scale he saw Jackson drop from his hand and the plastic bag he saw Jackson toss from his hand. The plastic bag contained what appeared to Matthews to be a cookie of crack cocaine.

Jackson was arrested, and on his person were found a pager and a total of $1,705.00 in cash. The Nissan 280 ZX evidently was Jackson's car. The cookie of crack cocaine weighed 20.7 grams.

## DISCUSSION OF THE ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN ITS RULINGS ON THE ADMISSIBILITY OF ANY ITEMS OF PHYSICAL EVIDENCE, AND IF SO, DID ITS INTRODUCTION PREJUDICE JACKSON?**

Jackson assigns error, on the grounds of relevance, to the trial court's admission at trial of evidence of a second quantity of cocaine that was found on the floor near the quantity of cocaine for possession of which he was being prosecuted, a large amount of money totaling $1,705.00 found on his person at the time of his arrest, along with a set of weighing scales, a pager, and some gold jewelry. Decisions concerning the relevancy and admissibility of evidence are in the broad discretion of the trial court. *Hentz v. State*, 542 So.2d 914, 917 (Miss. 1989) (citing *Burt v. State*, 493 So.2d 1325, 1326 (Miss.1986); *Carter v. State*, 310 So.2d 271, 273 (Miss.1975); and Rule 103(a) M.R.E.). Therefore, the Court will not reverse the trial court's decision unless abuse of that discretion is shown. *Id.*

## Second Quantity of Cocaine

In regards to the second quantity of cocaine, this evidence was neither mentioned during the discussion of the defense's motion in limine, nor was it mentioned during the opening statement of the State's attorney. The State's first and main witness was Officer Matthews. In his direct testimony, Matthews testified that he retrieved from the floor inside the house the cookie of crack cocaine he saw Jackson flip from his hand. The State neither asked him about, nor did he mention, the other cookie of cocaine.

Officer Matthews did later discuss the second quantity of cocaine. However, it was first mentioned by Jackson's attorney during cross-examination of Matthews. Jackson's attorney asked Matthews, "Now, there was another package of cocaine near the one that you found, wasn't it?" Defense counsel then proceeded to cross-examine Matthews rather intensely about this second cookie of cocaine and seemed to make it an issue at trial. Thus, Jackson's attorney is the one who brought up the evidence of the second cookie of crack cocaine.

The State only asked Matthews about the second cookie on redirect and later asked Officer Hearn about it during his direct examination, but only after it had been brought forward by Jackson's attorney. This second quantity of crack cocaine was eventually admitted into evidence as Exhibit 8.

In *Simpson v. State*, 366 So.2d 1085 (Miss. 1979), the defendants were tried for the crime of distribution of a controlled substance. At trial it was their contention that the narcotic agents initiated an illegal search of a residence and obtained evidence, namely, money which was tainted by the illegal search. *Simpson*, 366 So.2d at 1086. The money was not introduced into evidence by the State, but defense counsel, on cross-examination of a State's witness, elicited testimony about the search of the residence and the seizure of the money which was used to purchase the cocaine. *Id.* This Court held that the general rule is "that a defendant cannot complain of the evidence which he himself brings out." *Id.*

The facts of the present case are quite similar to that of *Simpson*. In the case sub judice, Matthews testified at defense counsel's own prompting. "It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial." *Fleming v. State*, 604 So.2d 280, 289 (Miss. 1992). Thus, this Court firmly believes that "[i]f the defendant goes fishing in the state's waters, he must take such fish as he catches." *Fleming v. State*, 604 So.2d 280, 289 (Miss. 1992).

## The Money, Weighing Scales and Pager

Officer Matthews testified that he saw Jackson drop the scales from his hand and that the money, totaling $1,705.00, and a pager were on Jackson's person at the time of the arrest. The money, which was found in locations including Jackson's shoe and his underwear, consisted of 2 hundreds, 54 twenties, 31 tens, and 23 fives. Jackson argues that these items of evidence were not relevant to the crime for which he was charged and were highly prejudicial.

Jackson further argues that the money found on his person does not aid the State's case on the issue of whether Jackson had cocaine in his possession, nor does it aid the issue of whether Jackson had the intent to distribute. He states that the money did not tend to prove or disprove any element of the State's case and, therefore, is irrelevant and inadmissible according to Miss. R. Evid. 402. However, under these factual circumstances, in which Jackson was seen tossing a plastic bag, which was later found to contain a large quantity of cocaine, at a location known for drug-dealing, his possession of such a substantial amount of money " . . . makes it more likely that [Jackson was] involved in drug-dealing. Thus, the evidence was relevant." *Haddox v. State*, 636 So.2d 1229, 1238 (Miss. 1994).

Furthermore, Matthews testified that he saw Jackson holding the weighing scale. This Court has deemed that a weighing scale can be considered "tools of the drug trade" and as such is relevant to the crime with which Jackson has been charged. *Hemphill v. State*, 566 So.2d 207, 209 (Miss. 1990). These "tools of the drug trade" would also include the pager that was found on Jackson's person at the time of his arrest. All of these items are relevant as they tend to establish an intent to distribute narcotics, which is one of the elements of the crime with which Jackson was charged, or at the least a possible involvement in drug-dealing. Therefore, the money, weighing scale and pager are all relevant to issues upon which Jackson was tried.

Jackson further argues that even if these items are relevant, they are substantially more prejudicial than probative and should be found inadmissible. However, this Court has sufficient case law that supports the State's opposing argument. *Hemphill*, 566 So.2d at 209. See, e.g., *Martin v. State*, 413 So.2d 730, 733-34 (Miss. 1982) (*citing United States v. Campanile*, 516 F.2d 288, 292 (2d Cir. 1975); *United States v. Fisher*, 455 F.2d 1101, 1103-04 (2d Cir. 1972); *United States v. Ravich*, 421 F.2d 1196, 1204-05 (2d Cir.) cert. denied, 400 U.S. 834 (1970); *United States v. Pentado*, 463 F.2d 355, 360 (5th Cir. 1972), cert denied, 409 U.S. 1079 (1972) and 410 U.S. 909 (1973)). Thus, in the case sub judice, the probative weight of the money, scales and other "tools of the trade," including the pager, is not overbalanced by the possible inflammatory consequence of admitting these items into evidence. *Id.* Therefore, the court did not abuse its discretion in admitting them into evidence.

### The Gold Jewelry

Jackson further contends that the State was wrongfully allowed to introduce evidence of gold jewelry found on his person at the time of his arrest. He argues that this item is not connected to the charged crime of possession of cocaine with the intent to distribute and, thus, is irrelevant. However, after thoroughly reviewing the record, this Court is unable to find any mention of gold jewelry that was made during the trial. Therefore, this argument appears to be without merit. For argument sake, if this evidence was irrelevant and, thus, inadmissible, it is clear that any error by the trial judge in admitting this evidence would not affect a substantial right of Jackson. *Whitehurst v. State*, 540 So.2d 1319, 1324 (Miss. 1989). The fact that Jackson was wearing gold jewelry is a neutral fact not likely to excite the jurors in any way prejudicial to him and would be harmless error. *Whitehurst*, 540

So.2d at 1324.

Therefore, we reject Jackson's contention and affirm on this issue.

## II. WHETHER THE TRIAL COURT WAS BARRED BY THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE III SECTION 22 OF THE MISSISSIPPI CONSTITUTION?

Jerry Jackson was tried twice, the first trial ending in a mistrial. The reason for the mistrial is that his appointed counsel , Mr. Klotz, had a conflict of interest in the multiple representation of Jackson and the owner of the house wherein the drugs were found, Earl Dunson. Jackson's defense attorney sought and received a mistrial after the jury had been seated and State's case had begun. At the beginning of the second trial, Jackson's new defense attorney, Mr. Holmes, renewed several motions, including a motion to dismiss on the grounds of double jeopardy. Upon review of the record, it appears that Mr. Klotz's motion to dismiss on double jeopardy grounds was made before the first trial began and was grounded on the claim that it was a double jeopardy violation to prosecute Jackson for a crime which also formed the basis for a revocation of his previous probation. In renewing the motion in the second trial, Jackson's counsel stated, "I have nothing new to add to what Mr. Klotz said." It follows that the only double jeopardy ground argued to the circuit court was the revocation ground above noted. This assignment of error is not argued by Jackson in his brief. "This Court has traditionally held that where an assignment of error is not discussed in the briefs it is considered abandoned or waived." *Magee v. State*, 542 So.2d 228, 234 (Miss. 1989) (*citing Taylor v. State*, 435 So.2d 701, 703 (Miss. 1983); *Lee v. State*, 338 So.2d 395, 397 (Miss.1976)).

Jackson does argue on appeal that after the mistrial was declared in the first trial, the second trial was barred by the constitutional double jeopardy clause. The ground Jackson now attempts to argue on appeal was not argued in the trial court and, as a general rule, is deemed waived. However, recently in *Fuselier v. State*, 654 So.2d 519 (Miss. 1995), this Court declined to impose the procedural bar. *Fuselier*, 654 So.2d at 522. This Court stated that "'[e]rrors affecting fundamental constitutional rights, [such as those against double jeopardy,] may be excepted from procedural bars which would otherwise prohibit their consideration . . . .'" *Id.* (*quoting Luckett v. State*, 582 So.2d 428, 430 (Miss. 1991)). Therefore, we deem it necessary to discuss this issue on the merits.

The record shows that the Public Defender's Office requested, and was granted, a mistrial. Mr. Fortner, the Hinds County Public Defender, also stated that the dilemma was clearly caused by defense counsel, and not the prosecution or the court. Generally, a defendant who moves for a mistrial is barred from later complaining of double jeopardy. *McClendon v. State*, 387 So.2d 112, 114 (Miss. 1980). In order for Jackson to overcome this bar, he must show that error occurred and that it was committed by the prosecution purposefully to force Jackson to move for a mistrial. *Carter v. State*, 402 So.2d 817, 821 (Miss. 1981). Without a showing of judicial error prejudicing the defendant, or misconduct on the part of the prosecutor, double jeopardy does not arise. *Nicholson v. State*, 672 So.2d 744, 750 (Miss. 1996) (*citing United States v. Jorn*, 400 U.S. 470, 482 (1970) (plurality)). Jackson fails to show proof of the prosecutor's intent to force Jackson to request a mistrial. It is obvious from the record that it was a decision wholly made by and a result from the defense attorney. Thus, this second assignment of error is without merit.

## III. WHETHER THE TRIAL COURT ERRED IN FAILING TO DISMISS THIS PROSECUTION FOR A VIOLATION OF THE STATUTORY RIGHT TO A SPEEDY TRIAL?

Jackson contends that the trial court erred in denying his motion to dismiss, in which he alleged a violation of the speedy trial statute, Miss. Code Ann. § 99-17-1 (1994). Under this statute, a defendant must be tried within 270 days of arraignment unless good cause be shown and a continuance duly granted. Miss. Code Ann. § 99-17-1 (1994). Since the accused has no duty to bring himself to trial, the State is saddled with the burden of establishing that there was good cause for the delay. *Walton v. State*, 678 So.2d 645, 64 8 (Miss. 1996).

In the instant case, Jackson was arraigned on the original indictment on April 25, 1995, and the first trial commenced on April 2, 1996. This was a total period of 343 days. Continuance orders were entered for the periods of time from December 6, 1995, to January 8, 1996, which was a period of 33 days, and from January 22, 1996, to March 25, 1996, which was a period of 63 days. The December continuance was a "bump" for the trial of another case, which is deemed good cause according to Miss. Code Ann. § 99-17-1 and, thus, the time elapsed during the period of continuance is not counted against the State. *Folk v. State*, 576 So.2d 1243, 1246 (Miss. 1991). *See also Adams v. State*, 583 So.2d 165, 167 (Miss. 1991). "A finding of good cause is a finding of ultimate fact, and should be treated on appeal as any other finding of fact; it will be left undisturbed where there is in the record substantial credible evidence from which it could have been made." *Walton v. State*, 678 So.2d 645, 648 (Miss. 1996) (*citing McNeal v. State*, 617 So.2d 999, 1007 (Miss. 1993)). The January continuance was granted on Jackson's own motion, to allow him time to hire an attorney. "Any delays in prosecution attributable to a defendant tolls the running of the time period." *Ford v. State*, 589 So.2d 1261, 1262 (Miss. 1991) (*citing Vickery v. State*, 535 So.2d 1371, 1377 (Miss. 1988)). Thus, the 63 days Jackson requested to find another attorney is not counted against the State.

The total period of time covered by the continuance orders was 96 days. This number is to be subtracted from the total of 343 days between arraignment and trial leaving a remainder of 247 days. Jackson was tried within the 270 day statutory period and, thus, there is no ground for dismissal.

Furthermore, in *Kinzey v. State*, 498 So.2d 814 (Miss. 1986), this Court agreed with those courts that have determined that if a mistrial results compliance with the statutory requirements of § 99-17-1 is satisfied. "The time for retrial then becomes a matter of discretion with the trial court to be measured by the constitutional standards of reasonableness and fairness under the constitutional right to a speedy trial as enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)." *Kinzey*, 498 So.2d at 816 ( *quoting Carlise v. State*, 393 So.2d 1312, 1314 (Miss. 1981)) . Thus, the statutory 270 day requirement does not apply to the period of time between arraignment and a subsequent trial following entry of a mistrial. *Id.* Rather, it applies to the period of time between arraignment and commencement of the first trial. *Id.*

The mistrial was entered on April 3, 1996. Jackson was arraigned on the superseding indictment on June 7, 1996, and the retrial commenced on July 22, 1996, which was 45 days after arraignment and well within the statutory 270 day period. Since there is neither an allegation, nor a showing that the State's purpose in seeking the superseding indictment was to circumvent the statutory 270 day requirement, there is no occasion to go further and apply constitutional speedy-trial analysis. *Corley*

*v. State*, 584 So.2d 769, 772 (Miss. 1991).

There is no merit to this assignment of error.

## IV. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

Jackson argues that the jury's finding that Jackson possessed cocaine with the intent to distribute was against the overwhelming weight of the evidence. Jackson contends that the State did not prove beyond a reasonable doubt that Jackson possessed the cocaine or that circumstantially he intended to distribute it. Therefore, he is now appealing the lower court's denial of his Motion for New Trial and JNOV.

The decision to grant a new trial rests in the sound discretion of the trial court , and will not be ordered unless ". . . 'the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice'." *Esparaza v. State*, 595 So.2d 418, 426 (Miss. 1992) (quoting *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983)). "[This Court] must consider all the evidence, not just that supporting the case for the prosecution, in the light most consistent with the verdict." *Jones v. State*, 635 So.2d 884, 887 (Miss. 1994) (quoting *Jackson v. State*, 580 So.2d 1217, 1219 (Miss. 1991)). Only on the basis of abuse of discretion will this Court reverse. *Jones*, 635 So.2d at 887. *See also Esparaza*, 595 So.2d at 426.

Upon reviewing the record, the facts and evidence presented do not point in favor of Jackson with sufficient force to hold that reasonable men could not have found beyond a reasonable doubt that he was guilty of possession, such that granting of the motion was required. *Jones*, 635 So.2d at 887 (*citing Jackson v. State*, 580 So.2d 1217, 1219 (Miss. 1991)). There was sufficient evidence, if believed by the jury, which showed Jackson was in actual possession of crack cocaine. Officer Matthews testified that he saw Jackson flip a plastic bag back into the house, which was later found in the home and determined to be 20.7 grams of crack cocaine. However, determining whether Jackson had the intent to distribute the crack cocaine discovered is arguable.

"It is certainly correct that a criminal intent may, and ordinarily can be shown only be shown by surrounding circumstances." *Jones v. State*, 635 So.2d 884, 889 (Miss. 1994) (*quoting Stringfield v. State*, 588 So.2d 438, 441 (Miss. 1991). *See also Shive v. State*, 507 So.2d 898, 900 (Miss.1987); *Boches v. State*, 506 So.2d 254, 260 (Miss. 1987); *Fisher v. State*, 481 So.2d 203, 213 (Miss.1985); *Hollingsworth v. State*, 392 So.2d 515, 517-18 (Miss. 1981). Nevertheless, Jackson alleges that there are no surrounding circumstances from which such an intent may be inferred. *Jones*, 635 So.2d at 889 (*citing Springfield v. State*, 588 So.2d 438, 440-441 (Miss. 1991)). He asserts that the amount of crack cocaine found was an amount which could be used for personal use. Thus, there is no intent to distribute.

However, even though the contraband found was in an amount which a person could reasonably hold for personal use, other evidence of possible involvement in the drug trade may be sufficient to establish intent. *Breckenridge v. State*, 472 So.2d 373, 378 (Miss.1985). If the juror considers the large amount of crack cocaine Officer Matthews saw Jackson flip back into the home he was exiting, the known drug location, the amount of money found on Jackson's person and the unusual places it was hidden, the denominations of the bank notes, the possession of the weighing scale, the

possession of the pager, and the automobile running with its door open in this particular type of neighborhood, all taken together, it is reasonable for an ordinary juror to conclude, by way of evidence and reasonable inferences, that Jackson had the intent to distribute all or some portion of the large cookie of cocaine that was recovered on the scene.

It is this Court's view that the evidence, as a whole, is adequate to allow a fair-minded jury to find intent to distribute beyond a reasonable doubt. Therefore, we find no merit to this assignment of error.

## CONCLUSION

Jackson first alleges that the second quantity of crack cocaine, scales, money, pager and jewelry were all inadmissible physical evidence. However, the testimony concerning the second quantity of crack cocaine was first elicited by Jackson's own attorney and, thus, he cannot complain of its admission. The scales, money and pager were all evidence that Jackson could, more likely than not, be involved in the drug trade. The evidence was relevant and should have been admissible. Jackson's contention that the admittance of the fact that he wore gold jewelry was prejudicial and irrelevant to the crime charged . This was not mentioned by the State and, therefore, there is no merit to this issue. The issue of the admittance of evidence is affirmed.

Jackson's double jeopardy rights were not violated. His attorney merely renewed an earlier motion made in the first trial which was grounded on the claim that it was a double jeopardy violation to prosecute Jackson for a crime which also formed the basis for a revocation of his previous probation. This argument was not mentioned in Jackson's brief which is now before this Court and, thus, it is considered waived. Furthermore, Jackson's attorney requested a mistrial in the first trial. Normally, a defendant who moves for mistrial is barred from later complaining of double jeopardy unless a showing is made that the prosecution forced the defendant to move for mistrial. There is no evidence of this in the record leaving this second assignment of error without merit.

Jackson's third assignment of error is that his statutory right to a speedy trial was violated. Although there was a time period of 343 days between his original indictment and the first trial, there were two continuances made which were not to be counted against the State. The first was a continuance made because of the trial of another case, and the second was requested by Jackson himself. These totaled 96 days which when subtracted from the total number of days would definitely meet the 270 day requirement. Furthermore, the amount of time from Jackson's second indictment and the second trial were well within the statutory requirements of Miss. Code Ann. § 99-17-1 (1994).

Lastly, the evidence presented to the jury, along with reasonable inferences, all taken together, would make it reasonable for a jury to conclude beyond a reasonable doubt that Jackson was in possession of crack cocaine and that he had the intent to distribute all or some portion of the large cookie of crack cocaine.

**CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF LIFE IMPRISONMENT AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS**

**AND WALLER, JJ., CONCUR.**