I.
This appeal arises out of events occurring on the evening of October 28, 1981, in a beer joint known as the Union Club in Laurel, Mississippi. At that time and place, Reginald Gage, an undercover agent for the Mississippi Bureau of Narcotics, purchased from Hernando Barnette, Defendant below and Appellant here, four dosage units of dilaudids for the sum of $100.00. On October 29, 1982, Barnette was formally charged with the sale of hydromorphone[1] in an indictment returned by the Jones County Grand Jury. The indictment charged that Barnette thus violated the Mississippi Controlled Substances Law, Miss. Code Ann. §§41-29-139(a)(1) and 41-29-115(A)(a)(1)(xi) (Supp. 1984). Barnette entered a plea of not guilty to the charges.
On April 18, 1983, the case was called for trial in the Circuit Court for the First Judicial District of Jones County, Mississippi. That afternoon the jury returned a verdict finding Barnette guilty as charged. Hydromorphone being a Schedule II controlled substance, the Circuit Court sentenced Barnette to the custody of the Mississippi Department of Corrections for a period of twelve (12) years and imposed a fine of $5,000.00. Miss. Code Ann. §§ 41-29-115(A)(a)(1)(xi) *Page 802 
and 41-29-139(b)(1) (Supp. 1984).
From this conviction and sentence, Barnette appeals. We affirm.
 II.
Barnette makes no challenge to the adequacy of the evidence to support the verdict of guilty returned by the jury. Suffice it to say that there is an abundance of evidence in this record which places the jury's verdict that Barnette sold an Schedule II illegal controlled substance well beyond our authority to disturb. Williams v. State, 463 So.2d 1064, 1067-68 (Miss. 1985).
Barnette does, however, argue that his conviction and sentence should be vacated on grounds that the State should be held precluded from maintaining this prosecution by reason of a prior prosecution of Barnette on a separate charge of sale of a controlled substance. The record reflects that, in a cause independent of this one, Barnette has been prosecuted for the sale of cocaine on October 21, 1981 — one week prior to the illegal sale with which he is charged in the case at bar. That record[2] reflects that Barnette was indicted for the sale of cocaine on October 29, 1982, (the same day as in the case at bar), and that he was tried and convicted on the cocaine charge on April 15, 1983 (three days prior to the trial in the case at bar).
Barnette's theory, if we appreciate it accurately, is that a state undercover agent induced him to commit the crime of sale of cocaine on October 21, 1981, and that it is fundamentally unfair to allow the State to "manufacture" a second crime by inducing Barnette to sell the same agent dilaudids one week later. This is so, we are told, notwithstanding that the two charges occurred on separate occasions a week apart.
We have repeatedly recognized that separate acts, though committed close in point of time to one another, may constitute separate criminal offenses. Lee v. State, 469 So.2d 1225, 1228-29 (Miss. 1985); Dixon v. State, 465 So.2d 1092, 1096-97 (Miss. 1985); Maycock v. Reed, 328 So.2d 349, 352 (Miss. 1976). The separate convictions approved in those cases were far more closely related than in the case at bar.
The double jeopardy clauses of the federal and state constitutions proscribe multiple prosecutions for the same offense. Sanders v. State, 429 So.2d 245 (Miss. 1983);Laughter v. State, 241 So.2d 641 (Miss. 1970). They present no legal impediment to the State's mounting two separate prosecutions for two separate violations of our criminal laws, even where the two offenses arise out of a common nucleus of operative fact. Ohio v. Johnson, 467 U.S. 493, ___, 104 S.Ct. 2536, 2540-41, 81 L.Ed.2d 425, 433 (1984); Lee v. State, 469 So.2d at 1229; Pharr v. State, 465 So.2d 294, 299-301 (Miss. 1984). This approach certainly applies to separate charges of sales of illegal controlled substances factually arising from incidents occurring a week apart from each other. This is so notwithstanding that the same undercover agent induced the sale at the same general location using the same modus operandi. The assignment of error is rejected.
 III.
Barnette next assigns as error the refusal of the trial judge to grant a mistrial on grounds that the prosecuting attorney impermissibly informed the jury that Barnette had previously been tried for the October 21, 1981, sale. This assignment of error arises from the State's cross-examination of a confidential informant, Reginald Thomas, who had been called as a witness by the defense.
 Q. And haven't you told this same story up here before, Mr. Thomas?
 A. Yes, I have.
 DEFENSE COUNSEL:
 If the Court please, we object to that.
 THE COURT:
 Overruled. He is on cross-examination. *Page 803 
 COUNTY PROSECUTOR:
 Q. And that was involving another matter, wasn't it?
 A. Yes.
 DEFENSE COUNSEL:
 If the Court please, we object to that and move for a mistrial based on that.
 THE COURT:
 Overruled.
 COUNTY PROSECUTOR:
 Q. And are you sure, Mr. Thomas, that you are not confusing this story that you are up here telling today with the other story and you were telling several days ago?
 A. I am positive on that.
This colloquy obviously had reference to Thomas' appearance as a defense witness in the cocaine sale trial several days earlier. Barnette contends that these questions and answers were so prejudicial as to have necessitated a mistrial and that the trial judge's refusal to grant a mistrial constitutes reversible error.
The State first argues that the objections fail for want of specificity to preserve the point for appeal. To be sure, the objections do not precisely articulate the grounds therefor. We consider, however, that objection was adequate to preserve the point in that the grounds — that the State was interjecting the fact of the prior prosecution — are apparent from the context.Donald v. State, 472 So.2d 370, 372 (Miss. 1985); Murphy v.State, 453 So.2d 1290, 1293 (Miss. 1984); see also Penningtonv. State, 437 So.2d 37, 42-43 (Miss. 1983) (Robertson, J., concurring); Jackson v. State, 163 Miss. 235, 244, 140 So. 683
(1932) (Griffith, J., dissenting) and Rule 103, Miss.R. Ev., effective January 1, 1986. It is apparent from the record that the trial judge fully understood the basis for the objection.
It is important to recognize the practical prejudice Barnette would have suffered from a requirement in this instance that his counsel state the specific grounds for objection on penalty of waiver. If the defense attorney had said, in the presence of the jury, "If the court please, we object to that on grounds that the State is improperly interjecting into this trial the fact that defendant has been charged and prosecuted in another illegal controlled substances case," the cat would have been completely out of the bag. In sum, we hold the objection made more than sufficient unto the day. Donald v. State, 472 So.2d at 372;Murphy v. State, 453 So.2d at 1293.
Turning to the merits, it is true, without doubt, that criminal prosecutions should be singular in theory and in fact and that the accused has a right that he be tried solely for that offense with which he has been charged in the indictment. We have in a variety of factual contexts reversed criminal convictions where the State improperly interjected into the trial proceedings evidence that the defendant may have committed or been involved in other illegal activities for which he had not been convicted.Walker v. State, 473 So.2d 435, 442 (Miss. 1985); Tobias v.State, 472 So.2d 398, 400 (Miss. 1985); Hughes v. State,470 So.2d 1046, 1047-48 (Miss. 1985); Gallion v. State,469 So.2d 1247, 1249-50 (Miss. 1985); Sumrall v. State, 257 So.2d 853, 854 (Miss. 1972); Floyd v. State, 166 Miss. 15, 35,148 So. 226, 230 (1933).
A recognized exception to the general rule exists when the party cross-examining attempts to impeach the witness' credibility by showing prior inconsistent statements. Smith v.State, 457 So.2d 327, 334 (Miss. 1984); Magee v. State,
21 So. 130, 131 (Miss. 1897). If, in fact, a witness such as Thomas has testified in a prior trial involving the same defendant and at that time made statements inconsistent with the testimony being given in the trial at issue, the prosecuting attorney has the prerogative, if he wishes to exercise it, to attack the witness' credibility through impeachment. See Ellis and Williams, Miss.Evidence, § 4-8 (1983). Conversely, the same prerogative is afforded defense counsel if a state witness has made prior inconsistent statements at an earlier trial. All of this is so even though there is the risk of the jury learning as a result that the defendant has been prosecuted for a separate offense. *Page 804 
In the case at bar, the questions asked in practical effect do little more than lay the predicate for impeachment (although, in candor, we are not clear from the record exactly where the prosecution was going with the said-to-be offensive line of questioning). They seek to establish that the witness Thomas on a prior occasion told the same story. While we doubt that the prosecuting attorney had any motive to help the defendant the questions may well be read as having been worded so as to avoid the jury knowing of the prior prosecution. The other occasion "up here before" and "involving another matter", or, put otherwise, "the other story . . . you were telling several days ago" goes after this predicate point in a fumbling way but nevertheless about as fairly as the prosecuting attorney could and still pursue the legitimate point of laying a predicate for impeachment.
In point of fact, the witness Thomas did not indicate any prior inconsistent statements and the matter was dropped.[3] We find no error in the trial judge's overruling of defense objections to the questions and no error in his denial of the motion for a mistrial.
 IV.
Finally, Barnette submits that the chain of custody of the controlled substance was not adequately established by the State. Here Barnette challenges the predicate the State was required to lay before evidence of the chemical analysis became admissible. He claims that because of the inadequate chain of custody showing the expert testimony of Linda Fay Weeks, a forensic scientist with the Mississippi Crime Lab, should have been excluded.
Our law on this point is settled. The initial test is "whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence". Lambert v. State, 462 So.2d 308, 312 (Miss. 1984);Grady v. State, 274 So.2d 141, 143 (Miss. 1973). "In such matters the presumption of regularity supports the official acts of public officers." Nix v. State, 276 So.2d 652, 653 (Miss. 1973). In the case sub judice the record reflects no suggestion of tampering or substitution of the evidence, thus there is no merit to this assignment of error.
Barnette also complains that Mrs. Weeks' testimony should not have been admitted because her analysis of the substance was in part based on a hearsay laboratory report from the mass spectrospist. We decline to consider this aspect of this assignment of error as it is raised for the first time on appeal. Failure to present an objection such as this at trial precludes raising it on appeal. Murphy v. State, 453 So.2d at 1294;Sanders v. State, 260 So.2d 466, 471 (Miss. 1972); Pepper v.State, 200 Miss. 891, 27 So.2d 842, 843 (1946).
CONVICTION OF SALE OF HYDROMORPHONE AND SENTENCE OF TWELVE (12) YEARS IMPRISONMENT AND FIVE THOUSAND ($5,000.00) DOLLAR FINE AFFIRMED.
PATTERSON, C.J., WALKER, ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
[1] Dilaudid and hydromorphone are clinically and physically identical we are told in the testimony of the State's expert chemist.
[2] The record regarding the cocaine charge is before us as that case is presently pending on the docket of this Court.Barnette v. State, 481 So.2d 788 (Miss. 1985).
[3] As indicated above, the impeachment of Thomas was never accomplished. Accordingly, nothing said in this opinion should be construed as disturbing our familiar rule proscribing impeachment of a witness on an immaterial matter. See Wiley v. State,449 So.2d 756, 759 (Miss. 1984); Kelly v. State, 278 So.2d 400, 402 (Miss. 1973); Freeze v. Taylor, 257 So. 509, 513 (Miss. 1972). *Page 1017