## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00760-SCT

*ALBERTA CARTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/09/97 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE T. DICKERSON |
| | KATHRYN N. NESTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/19/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/10/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Alberta Carter was indicted by the Wayne County Grand Jury during the January Term 1997, for the murder of Willie Mildred Hundley. On May 8, 1997, the jury found Carter guilty as charged, and Circuit Court Judge Robert W. Bailey sentenced her to the mandatory life sentence. Carter appeals to this Court, assigning as error the trial court's admission of hearsay testimony and prior criminal conduct, refusal of a lesser included offense instruction on manslaughter, the prosecutor's misinforming the jury on the law during closing argument, and denial of her motions for a new trial or JNOV. Finding no merit to Carter's claims, we affirm her conviction and sentence in this case.

### STATEMENT OF THE FACTS

¶2. On Thanksgiving Day, November 28, 1996, Alberta Carter, her boyfriend Melvin Luke, her brother Jerry Cooley, and his girlfriend Willie Mildred Hundley were riding around in Cooley's brother's truck drinking bootleg whiskey and beer. Cooley and Carter got into an argument, because Cooley wanted some

of Carter's whiskey, and she wouldn't give him any.

¶3. Three or four minutes later, they pulled the truck over to the side of the road for Carter and Hundley to go to the bathroom. The two women went to the back of the truck while Cooley and Luke stayed inside. Cooley testified that he heard Hundley yell, "Alberta!" and heard a gunshot, so he went to the back of the truck to investigate. When he approached, he saw Carter put something in the front of her pants that he thought was a gun and pull her shirt over it. Carter testified that she was only tucking her shirt into her pants and didn't have a gun. Cooley said that Carter told him that someone had been shooting at her and Hundley. He testified that Carter looked at him and said, "bitch," and then went back to the truck and drove away. Carter denied calling Hundley a bitch and said she didn't remember telling Cooley that someone had been shooting at them. She testified that when she and Hundley got out of the truck, they got into an argument, because Hundley wanted to go back into town to get more to drink, and Carter didn't want to drive back to town. When Carter and Luke drove off, Cooley found Hundley lying in the bushes and discovered that she'd been shot.

¶4. Luke testified that he was drunk and asleep, woke up when he heard gunshots, but then went back to sleep again because he'd been drinking too much. He said that when they drove off, Carter told him that she had killed the girl. Carter denied killing Hundley, and denied telling Luke that she'd shot anyone. Her story was that Cooley and Hundley were alive and well when she drove away. Luke also testified that although he didn't see her with a gun that day, he knew that Carter regularly carried a .38 caliber pistol, the same caliber of the bullet recovered from Hundley's body.

¶5. Cooley flagged down a passing motorist, Darryl Williams, and told him that "his wife" had been shot. Williams stopped and called 911. While on the phone with the emergency dispatcher, Williams asked Cooley what had happened, and he replied, "My crazy-ass sister shot my wife." Deputy Sheriff Michael Patton was called to the scene, arriving about ten minutes after the shooting. When Deputy Patton asked Cooley who had shot Hundley, Cooley told him that his crazy sister shot her. Sheriff Farrior also questioned Cooley at the hospital that night around 7:00 about what had happened, and Cooley told him that Carter had shot Hundley. Cooley was intoxicated when the sheriff spoke with him that night, but his statement the next morning was substantially the same as his statement the night before and his testimony at trial.

¶6. Carter turned herself in at 10:00 a.m. the next morning. She gave a statement to Sheriff Farrior claiming that she and Luke left Cooley and Hundley alive on the side of the road between 8:30 and 9:00 p.m. However, Hundley died at the hospital at approximately 6:45 p.m. At trial, Carter explained that she had just been confused about the time. Carter denied shooting Hundley and said that she turned herself in, because she'd heard that the police were looking for her in connection with the murder.

¶7. Carter denied ever owning, possessing, or firing a .38 caliber pistol. Carter further denied ever shooting at anyone at her mother's house, particularly with a .38, although she testified that she had fired a .22 outside at her mother's house. She also stated that her mother had accidentally shot her before. Sheriff Farrior testified on rebuttal that he investigated a shooting in July of 1996, at Carter's mother's house between Carter and her mother in which a .38 caliber and a .22 caliber were fired.

¶8. Based on the above testimony, the jury found Carter guilty of murder. Judge Bailey sentenced Carter to the mandatory term of life imprisonment, and Carter appeals to this Court.

## STATEMENT OF THE LAW

# I.

## THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE HEARSAY TESTIMONY.

¶9. Carter argues that the testimony of Daryl Williams and Deputy Patton as to Cooley's statements that his crazy sister shot Hundley were inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Miss. R. Evid. 801(c). The testimony in question falls under the definition of hearsay, making it inadmissible unless it falls under a recognized exception. Miss. R. Evid. 802. The State's position is that Cooley's statements were admissible under the excited utterance exception. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Miss. R. Evid. 803(2). Carter responds that these statements do not qualify as excited utterances, because they were prompted and not spontaneous, because Cooley had time to cool off before making the statements, and because Cooley did not witness the shooting.

¶10. Spontaneity is "the essential ingredient" to the underlying theory supporting admission of an excited utterance. ***Davis v. State,*** 611 So.2d 906, 913-14 (Miss. 1992) (*quoting* Miss. R. Evid. 803(2) cmt.). Here, Cooley's statements that Carter shot Hundley were prompted by Williams's and Deputy Patton's questions about what happened. However, "under the excited utterance exception the fact that questions are asked, while relevant to spontaneity, does not ipso facto demonstrate a lack of spontaneity in every case." ***Sanders v. State***, 586 So.2d 792, 795 (Miss. 1991). Where the excited utterance is prompted by a simple question, even from an officer, such as "What happened?" or "What's wrong?" we have still found the statement to fall under the exception. ***Id***.; ***Davis***, 611 So.2d at 908, 913-14.

¶11. Carter also argues that Cooley had time to cool off before making the statements, removing them from the definition of excited utterances. The key question is whether Cooley was still in an excited state when he made the statements. Miss. R. Evid. 803(2) cmt. The issue of spontaneity must be determined in a case by case analysis, and the length of time between the incident creating the excitement and the statement can vary widely. ***Owens v. State***, No. 94-CT-00537-SCT, 1998 WL 105776, at *2 (Miss. Mar. 12, 1998). Here, Cooley's statements were made to the first person on the scene during the 911 emergency call and to the first officer on the scene. *See* ***Clark v. State***, 693 So.2d 927, 932 (Miss. 1997) (911 call transcript admissible as excited utterance). Cooley made his statement to Williams only moments after the shooting, and spoke to Officer Patton about ten minutes after the shooting. Although Officer Patton stated that Cooley wasn't hysterical and was "calm in a way," he also said that Cooley was upset and crying and spoke in an excited manner, and Williams talked about the confusion when he arrived. Based upon the short amount of time between the shooting and Cooley's statements, we find that they were spontaneous enough to fall under the excited utterance exception.

¶12. Carter also takes exception with the admission of Cooley's statements, because Cooley did not witness the shooting. "The declarant need not be a participant but only an observer of the event which triggered the excitement." Miss. R. Evid. 803(2) cmt. Cooley was an observer in the sense that he discovered his girlfriend's body and witnessed the events leading up to and immediately following the shooting. Although he may not have actually seen Carter pull the trigger, he heard the gunshot and was obviously traumatized by what he discovered upon exiting the truck. We uphold the trial court's ruling on this issue.

## II.

### THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE TESTIMONY REGARDING DEFENDANT'S PRIOR, UNRELATED CRIMINAL CONDUCT.

¶13. Carter complains that the evidence regarding her prior criminal conduct, relating to the "shoot-out" at her mother's house, not resulting in a conviction was highly prejudicial and inadmissible under the rules of evidence and current Mississippi case law. She also maintains that her testimony that she had never owned or fired a .38 caliber weapon did not open the door to this evidence. On appeal, the State admits that Carter did not open the door to the sheriff's rebuttal testimony, and that the trial court would probably have sustained a 404(b)[1] objection had she raised it. ***Blanks v. State***, 547 So.2d 29, 37 (Miss. 1989) (defendant's testimony that he'd never fired the gun, had never received instruction from his mother on shooting the gun, and knew that he wasn't supposed to handle it did not open the door to evidence of a prior instance in which the defendant waived the pistol at someone while threatening to shoot him). However, the State asserts that Carter is procedurally barred from raising this issue on appeal, because at trial she objected to the admission of Sheriff Farrior's testimony on grounds of relevancy and lack of proper foundation regarding the bullet holes. "[O]bjection on one ground at trial waives all other grounds for objection on appeal." ***Lester v. State***, 692 So.2d 755, 772 (Miss. 1997). However, Rule 404(b) is an issue of relevancy, and Carter objected on grounds of relevancy. Where the specific grounds for objection are apparent from the context, a general objection is sufficient to preserve the error for appeal. ***Barnette v. State***, 478 So.2d 800, 803 (Miss. 1985). The ***Barnette*** Court also noted the potential for prejudice if the defense attorney were required to state the specific grounds for objection to admission of a prior criminal act. ***Id***. We find that this issue is not procedurally barred.

¶14. In the alternative, the State contends that any error was harmless, because the testimony did not affect the outcome of the case. We agree. Where the prejudice from an erroneous admission of evidence dims in comparison to other overwhelming evidence, this Court has refused to reverse. ***Holland v. State***, 587 So.2d 848, 864 (Miss. 1991). Connecting Carter to the caliber of pistol used to kill Hundley was not central to the prosecution's case. The key evidence here was the eyewitness accounts identifying Carter as the only possible shooter. We find that erroneous admission of Sheriff Farrior's rebuttal testimony did not prejudice Carter to such an extent as to require reversal. ***Peterson v. State***, 671 So.2d 647, 655-56 (Miss. 1996).

## III.

### THE TRIAL COURT ERRED IN REFUSING THE PROPOSED MANSLAUGHTER INSTRUCTIONS.

¶15. Carter contends that the trial court erred in sustaining the State's objection to Carter's manslaughter instruction on the grounds that the evidence did not support it. She argues that the instruction on heat of passion manslaughter was supported by the witnesses' testimony that she and Hundley had been drinking and were arguing before the shooting. Cooley testified that Hundley merely intervened briefly in an argument between Cooley and Carter. Carter testified that she and Hundley became involved in an argument over whether Carter would drive Hundley back into town for more alcohol. However, even taking Carter's testimony as true, an argument of such minimal importance does not fall under the definition of heat of passion. There was no evidence that Hundley struck, threatened, or provoked Carter in any way so as to

produce the type of immediate and reasonably anticipated anger required to rise to the level of heat of passion. "The mere fact that [the victim] and appellant argued before the shooting would not reduce the crime to manslaughter. . ." ***Johnson v. State***, 416 So.2d 383, 388 (Miss. 1982). We find that Judge Bailey was correct in finding that the evidence did not support an instruction on heat of passion manslaughter in this case.

## IV.

### THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO PROVIDE AN INCORRECT DEFINITION OF "MALICE AFORETHOUGHT" TO THE JURY DURING CLOSING ARGUMENT.

¶16. During the defendant's closing argument, District Attorney Bilbo Mitchell objected to the defense attorney's comment that Carter had no time to develop malice aforethought and stated to the court, "It doesn't take any time at all to form malice aforethought. And the Supreme Court has ruled that." Later, Assistant District Attorney Greg Malta argued the following:

> [M]alice aforethought is the legal term for the intent to kill. That's all it is. It is the intent to kill. And you can formulate the intent to kill as quickly as you can think. So it doesn't take any time to develop malice aforethought, so it's not a good argument for you to consider.

¶17. On appeal, Carter asserts that the trial judge should have clarified the State's definition of malice aforethought for the jury, because it was a clear misstatement of the law. The State's position is that the trial court cannot be held in error on this issue, because Carter never raised the matter at trial. Carter failed to object to either of these comments during closing argument or to request an instruction from the court for the jury to disregard the comments. As a result, she is procedurally barred from raising this issue on appeal. ***Snelson v. State***, 704 So.2d 452, 454 (Miss. 1997).

¶18. Notwithstanding the procedural bar, the district attorney's comments during closing argument were not necessarily a misstatement of the law. Although this Court has held that malice aforethought, or deliberate design, may not be formed at the instant of the murder, it may be formed "very quickly." ***Strong v. State***, 600 So.2d 199, 202 (Miss. 1992); ***Tran v. State***, 681 So.2d 514, 516 (Miss. 1996). The prosecutor's comments that it takes no time at all to form malice aforethought could be taken as meaning simply that the intent may be formed swiftly. Furthermore, we have held that in a case where the manslaughter instruction was not warranted by the evidence, no reversible error occurred by granting an "at the moment" deliberate design instruction. ***Catchings v. State***, 684 So.2d 591, 595 (Miss. 1996). The real problem with the "at the moment" deliberate design instruction is that it "rules out manslaughter, and is in hopeless conflict with the manslaughter conviction." ***Id***. (*quoting **Windham v. State***, 520 So.2d 123, 126 (Miss. 1987)). Where, as here, the evidence did not support a finding of manslaughter, an erroneous "at the moment" deliberate design/malice aforethought instruction does not amount to reversible error. We hold that the trial court's failure to clarify the definition of malice aforethought did not amount to manifest injustice and therefore does not require reversal. ***Dedeaux v. State***, 630 So.2d 30, 33 (Miss. 1993).

## V.

### THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶19. Carter complains that the trial court erred in overruling her motions for a directed verdict and JNOV and for a new trial. Specifically, she argues that there was no proof of malice aforethought, and a reasonable and fair-minded jury could only find her guilty of heat of passion manslaughter. The State, on the other hand, maintains that there was sufficient evidence to support the jury's verdict and insufficient evidence to find that Carter shot Hundley in the heat of passion.

> When reviewing a challenge to the weight of the evidence, this Court must determine whether the trial judge abused his discretion in denying a new trial. This Court, accepting as true all evidence favorable to the State, will determine whether "the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." *Wetz v. State*, 503 So.2d 803, 812-13 (Miss.1987).

*Taylor v. State*, 672 So.2d 1246, 1256 (Miss. 1996).

¶20. As previously discussed in Issue III, there was insufficient evidence to support a finding of heat of passion manslaughter in this case. Instead, the testimony at trial supported a finding of murder as defined in § 97-3-19(1)(a): that Carter (1) killed Hundley, (2) without authority of law, (3) with deliberate design to effect Hundley's death. Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1997). The evidence showed that Hundley was shot and killed with a .38 caliber pistol at a time when only Carter had the opportunity to kill her.

¶21. The only element questioned by Carter is that of deliberate design. This Court has held that malice, or deliberate design, may be inferred from use of a deadly weapon. *Tran*, 681 So.2d at 517-18; *Day v. State*, 589 So.2d 637, 642 (Miss. 1991); *Wilson v. State*, 574 So.2d 1324, 1337 (Miss. 1990); *McGowan v. State*, 541 So.2d 1027, 1030 (Miss. 1989); *Nicolaou v. State*, 534 So. 2d 168, 171-72 (Miss. 1988); *Russell v. State*, 497 So.2d 75, 76 (Miss. 1986); *Dickins v. State*, 208 Miss. 69, 92, 43 So.2d 366, 373 (1949). That presumption prevails "unless facts are introduced in evidence changing the character of the killing and showing either justification or necessity." *Dickins*, 208 Miss. at 92, 43 So.2d at 373. No evidence was presented to show justification or necessity here. The State presented sufficient evidence to prove that Carter killed Hundley with a deadly weapon (a .38 caliber pistol), so we affirm the jury's verdict in this case.

## CONCLUSION

¶22. Carter has failed to present any persuasive assignments of error requiring reversal on appeal. We therefore affirm the conviction of murder and life sentence in this case.

¶23. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

   **BANKS, JUSTICE, DISSENTING:**

¶24. Because it is my view that a manslaughter instruction was justified in this case, I dissent.

¶25. The majority concludes that the evidence does not support a manslaughter instruction. I disagree. In my view, the lack of direct evidence on the question of deliberate design warrants a manslaughter instruction. While it is true that an inference of deliberate design may be drawn from the use of a deadly weapon, no jury is compelled to draw such an inference. An unlawful killing in the absence of deliberate design is manslaughter and the jury should have been so instructed. Miss. Code Ann. § 97-3-35 (1994); *Wells v. State*, 305 So. 2d 333, 336 (Miss. 1974); *Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

¶26. In *Mullaney v. Wilbur*, 421 U.S. 684 (1975), it was determined that conviction could not rely on a presumption of malice, but the prosecution had to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation in order to pass muster under the due process clause of the United States Constitution. As such, it is my view that a presumption of malice from the use of a deadly weapon cannot prevent a manslaughter instruction by Carter. Because there is no direct evidence as to deliberate design, with no testimony as to what actually occurred between Carter and Hundley, who were sisters in law with no history of prior hostility, I suggest that the jury should have been allowed to consider a manslaughter instruction in this case.

1. Evidence of other bad acts is inadmissible to prove that a person acted in conformity therewith. Miss. R. Evid. 404(b).