IN THE SUPREME COURT OF MISSISSIPPI
NO. 98-KA-00521-SCT

*THOMAS ETHREN SULLIVAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/11/1998 |
| TRIAL JUDGE: | HON. W. M. O'BARR, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HERBERT H. KLEIN, III. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | E. LINDSAY CARTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/04/1999 |
| MOTION FOR REHEARING FILED: | ; denied 8/10/2000 |
| MANDATE ISSUED: | |

## BEFORE SULLIVAN, P.J., SMITH AND COBB, JJ.

## SMITH, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Thomas Ethren Sullivan appeals his March 4, 1998 conviction in the Forrest County Circuit Court for the crimes of conspiracy and sale of amphetamine. He was then sentenced to ten years in the custody of the Department of Corrections and a $25,000 fine for the conspiracy charge and to a consecutive fifteen year sentence in the custody of the Department of Corrections and a $25,000 fine for the sale of amphetamine charge. Sullivan appeals his conviction and sentence citing the following issues:

**I. DID THE TRIAL COURT ERR IN ADMITTING THE TESTIMONY OF SARAH BRADLEY, SIMONE REEVES, AND SIMPSON COUNTY DEPUTY RANDY CRAWFORD, AND IN DETERMINING THAT THE JURY SHOULD DECIDE WHETHER CERTAIN STATEMENTS MADE BY KARLTON BRADLEY WERE IN FURTHERANCE OF THE CONSPIRACY?**

**II. DID THE TRIAL COURT ERR IN ALLOWING THE STATE'S EXHIBITS OF CONTROLLED SUBSTANCES TO BE INTRODUCED?**

**III. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A MISTRIAL AFTER ALLOWING THE TESTIMONY OF AGENT SHELBOURN REGARDING THE GUILTY PLEAS AND GUILTY VERDICTS OF CO-DEFENDANTS?**

**IV. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A MISTRIAL AFTER THE ASSISTANT DISTRICT ATTORNEY CALLED THE DEFENDANT A "DANGER TO SOCIETY"?**

**V. DID THE TRIAL COURT ERR IN ALLOWING RE-CROSS EXAMINATION OF THE DEFENDANT, WHEN THE DEFENDANT ARGUES THAT THE QUESTIONS WERE OUTSIDE THE SCOPE OF THE RE-DIRECT QUESTIONING?**

**VI. DID THE TRIAL COURT ERR IN REFUSING TO GRANT CIRCUMSTANTIAL EVIDENCE INSTRUCTIONS PROPOSED BY THE DEFENDANT?**

**VII. DID THE TRIAL COURT ERR IN REFUSING TO GRANT DEFENDANT'S PROPOSED JURY INSTRUCTION D-14?**

**VIII. DID THE TRIAL COURT ERR IN REFUSING TO GRANT DEFENDANT'S MOTION FOR A NEW TRIAL AND MOTIONS FOR A DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, AND JURY INSTRUCTION D-7?**

**IX. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY TO CONTINUE ITS DELIBERATIONS WHEN ONE JUROR STATED THAT THE JURORS WERE "HOPELESSLY DEADLOCKED"?**

**X. WAS THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS PREJUDICIAL TO THE DEFENDANT?**

**XI. DID THE TRIAL COURT ERR IN IMPOSING A SENTENCE THAT WAS DISPROPORTIONATE TO THE CRIME ITSELF AND TO THE SENTENCES OF SIMILARLY SITUATED DEFENDANTS?**

FACTS

¶2. Sullivan's conviction is based on evidence arising out of two separate incidents, one on May 29, 1996, and the other on June 13, 1996. The facts of the first incident are so similar to the second incident that, for purposes of addressing the issues involved, it is sufficient to only recount the facts surrounding the first incident. Sullivan acknowledges that on both dates of the alleged sales of amphetamine he met Karlton Bradley at his home in Simpson County, but Sullivan testifies that Bradley was there to sell him cocaine. Sullivan states that he has a cocaine addiction. However, Sullivan claims that he at no time supplied amphetamine to Bradley.

¶3. During the time at issue, Karlton Bradley was regularly selling drugs to Simone Reeves. Reeves was an undercover agent with the Mississippi Bureau of Narcotics, and she testified at trial regarding her relationship with Karlton Bradley. On May 29, Reeves and Bradley spoke on the telephone, and she asked him if she could buy amphetamine from him. Bradley then called Sullivan, as evidenced by phone records and an audio tape that recorded Bradley's incoming and outgoing calls. The calls were monitored by the Bureau of Narcotics. During the May 29 call, Bradley said to Sulllivan,"I just talked to somebody. They want two of those." Sullivan claims that Bradley is referring to guns that Sullivan was trying to sell to support

his cocaine habit. Later that afternoon, Karl Bradley and his wife Sarah Bradley drove to Sullivan's Simpson County house. Sarah Bradley testified Karl did not keep much amphetamine in their apartment. Sarah testified that Karl said he needed to pick up amphetamine for, Reeves, and that he was paying for the amphetamine at least partially with cocaine. She stated that she and Karl drove to Sullivan's house, where Sullivan was sitting in his truck. She watched Karl get out of the truck and get into Sullivan's truck. Karl then came back and got in his truck with Sarah and told her he had to pick up the newspaper lying on the side of the road. Karl went to pick up the newspaper and returned to the truck. Inside the newspaper there was a sandwich bag containing a pasty substance.

¶4. Later that evening Bradley paged Reeves, and she came to his apartment in Hattiesburg. She gave him $3,800.00 ($3,900 for the June 13 purchase), and he gave her a sandwich bag containing two ounces of a brown, pasty substance. Reeves handed the bag to another MBN agent, who sent the bag to the Mississippi Crime Laboratory. Both lab experts who tested the substances purchased by Reeves from Bradley testified that the bags contained amphetamine.

## DISCUSSION

### I. DID THE TRIAL COURT ERR IN ADMITTING THE TESTIMONY OF SARAH BRADLEY, SIMONE REEVES, AND SIMPSON COUNTY DEPUTY RANDY CRAWFORD, AND IN DETERMINING THAT THE JURY SHOULD DECIDE WHETHER CERTAIN STATEMENTS MADE BY KARLTON BRADLEY WERE IN FURTHERANCE OF THE CONSPIRACY?[1]

¶5. The rule prohibiting the admission of hearsay testimony into evidence at trial makes an exception for conspiracy situations; a statement is not hearsay if it is made by a co-conspirator and the statement is made during the course and in furtherance of a the conspiracy. *See* M.R.E. 801(d)(2)(E). This Court has clearly followed this rule of evidence. *See **Ponthieux v. State***, 532 So. 2d 1239 (Miss. 1988); ***Nixon v. State***, 533 So. 2d 1078 (Miss. 1987). However, before the statement of an alleged co-conspirator can be admitted as evidence, the trial court must determine that there is preliminary evidence of a conspiracy. *See **Tavares v. State**, 725 So. 2d 803, 809 (Miss. 1998)* (citing ***Ponthieux***, 532 So. 2d at 1243-44). The appellate court's freedom to review a trial court's finding-that a conspiracy has reasonably been established by the evidence presented prior to the testimony at issue-is restricted to a "clearly erroneous" standard of review. ***Tavares***, 725 So. 2d at 809. Also, the appellate court looks at the entire record when determining whether a conspiracy had been established. *See **id.*** (citing ***Ponthieux***, 532 So. 2d at 1243-44).

¶6. Sullivan's sole argument is that the testimony of Sarah Bradley and Simone Reeves is inadmissible. He claims that their testimony is hearsay because the State failed to obtain a ruling by the trial court judge that there was sufficient evidence of a conspiracy. However, Sullivan ignores the language in a case that he himself cites. According to ***Nixon v. State***, "This Court rejects the notion of the defendant that the trial court has to specifically make such a finding in the record." 533 So. 2d at 1092. There is no need for the trial court to make a finding that a conspiracy existed before admitting such testimony. Additionally, this Court has the freedom to look at the entire record. In doing so, we can see that in the case of Sarah Bradley, four witnesses had already offered their testimony regarding Karlton Bradley's phone records, the content of relevant phone conversations, and the exchange between Bradley and Reeves.

¶7. The testimony of Simone Reeves included conversations she had with Karlton Bradley and the drug purchases she made from him. Because Bradley's drug sales are evidence of the suspected conspiracy, and

Reeves's testimony went directly toward establishment of that conspiracy, a review of the entire record suggests that the admission of Reeves's testimony was well-founded. It is also the case that Reeves's testimony pertained to her relationship with Karlton Bradley, not to incidents about which she did not have firsthand knowledge.

¶8. Sullivan alleges that the testimony of Deputy Randy Crawford contained inadmissible hearsay because "Deputy Crawford was allowed to testify as to a statement made by Ken Ritchie regarding which vehicle he requested Deputy Crawford to surveil [sic]." However, Sullivan fails to address the fact that the statements Crawford repeated were statements that Ritchie made to him when giving him instructions.

¶9. Sullivan also objects to the trial court's characterization of the ruling regarding evidence of a conspiracy as a question of fact for the jury. The exchange occurred as follows:

> Mr. Klein [attorney for Sullivan]: Your Honor, you let the jury decide what's hearsay?
>
> The Court: No. I'm going to let the jury decide whether it was in furtherance of the conspiracy.

Given that there was no procedural error on the part of the trial court-that is, he did not fail to make a ruling on the sufficiency of the evidence, because none was appropriate-and that it is reasonable for this Court to hold that there was sufficient evidence of a conspiracy, the judge's statement that existence of a conspiracy was a question of fact for the jury can be interpreted to mean that the jury had the freedom to come to its own conclusions regarding the sufficiency of the evidence of the conspiracy. His language, although not necessarily correct as a term of art, constitutes harmless error. This issue is without merit.

### II. DID THE TRIAL COURT ERR IN ALLOWING THE STATE'S EXHIBITS OF CONTROLLED SUBSTANCES TO BE INTRODUCED?

¶10. The procedure to establish the admissibility of evidence at trial is set out in Mississippi Rules of Evidence 104; the rules of evidence grant much deference to the trial court judge to make preliminary rulings on issues of admissibility. *See* M.R.E. 104. The case law most closely on point is ***Barnette v. State,*** 478 So. 2d 800 (Miss. 1985). In ***Barnette*** the defendant alleged that the chain of custody of a controlled substance was not clearly proven, and therefore testimony from the Mississippi Crime Lab should not have ben admitted. *See **id.*** at 804. In that case this Court restated the clearly established law: the foremost question is whether there is a "reasonable inference of probable tampering" with the evidence prior to its admission against the defendant. *Id.* at 804 (quoting ***Lambert v. State***, 462 So. 2d 308, 312 (Miss. 1984)) ; ***Grady v. State***, 274 So. 2d 141, 143 (Miss. 1973)). Additionally, "the presumption of regularity supports the official acts of public officers." ***Barnette***, 478 So. 2d at 804 (quoting ***Nix v. State***, 276 So. 2d 652, 653 (Miss. 1973)). In cases in which there is no evidence of tampering reflected in the record, the appellate court will not assume that the appeal has merit. *See **id**.* at 804.

¶11. Sullivan alleges that crystal methamphetamine was improperly admitted into evidence because of the circumstantial nature of the substance's transport from Karlton Bradley to the Mississippi Crime Lab. Sullivan goes so far as to suggest that "there is a reasonable inference that Karlton Bradley substituted the evidence." However, Sullivan can produce no evidence, from the record or otherwise, that any tampering took place. Each person through whose hands the evidence passed was called to testify during the trial, and each accounted for his or her time in possession of the evidence without contradiction from the defense. There are no grounds within the record to suggest tampering, and as a result this issue is without merit.

### III. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A MISTRIAL AFTER ALLOWING THE TESTIMONY OF AGENT SHELBOURN REGARDING THE GUILTY PLEAS AND GUILTY VERDICTS OF CO-DEFENDANTS?

¶12. Generally, when defense counsel does not object to a statement by a prosecutor made during the course of trial, the defendant is procedurally barred from raising the prejudicial nature of the statement as grounds for appeal. *See, e.g., **Blue v. State***, 674 So. 2d 1184, 1191 (Miss. 1996) (citing ***Foster v. State***, 639 So. 2d 1263, 1270 (Miss. 1994)). An objection on constitutional grounds must be raised at trial to be considered on appeal. ***Fleming v. State***, 604 So. 2d 280, 292 (Miss. 1992). One exception to this rule is that a statement not objected to at trial may be looked at by the appellate court if the statement fundamentally prevented the defendant from receiving a fair trial. *See **Johns v. State***, 592 So. 2d 86, 91 (Miss. 1992). For example, if a testifying co-defendant reveals to the jury that he or she has already been convicted for the same crime as the defendant, there is a presumption that the jury is influenced toward finding the defendant guilty; this denies the defendant a fundamentally fair trial. *See **id**.* This rule is limited to information regarding a co-defendant or co-conspirator's convictions, as the intent is to prevent the jury from relying on another's jury's findings of fact. However, a trial judge may alleviate the potential damage of such kinds of testimony by addressing the statement with the jury. *See **Hoops v. State**, 681 So. 2d 521, 528 (Miss. 1996).* This Court has held that the trial court's instruction to the jury to disregard such testimony is sufficient to prevent prejudice. *See **Baine v. State***, 604 So. 2d 249, 257 (Miss. 1992); ***Dennis v. State***, 555 So. 2d 679, 682-83 (Miss. 1989). The decision to grant a mistrial because of potentially damaging statements is left to the discretion of the trial judge, and the trial judge must grant a mistrial if he believes that certain testimony is so damaging that his instructions to the jury could not adequately temper the testimony's effects. *See **Hoops**, 681 So. 2d at 528.*

¶13. Sullivan alleges that the testimony of Mississippi Bureau of Narcotics Agent Tony Shelbourn prejudiced the jury because of his statements made regarding Sullivan's co-defendants. The statements in question occurred as follows (Shelbourn is responding to the prosecutor):

> Q. And why was it a successful investigation?
>
> A. Well, we did our job, sir. We took a lot of drugs off the street, put a lot of people in jail, a lot of people pled guilty and other people have been found guilty, sir. Drugs-
>
> Q. Were you about to-I apologize.
>
> A. In addition, we were able to identify Karlton Bradley's source of cocaine and put him in prison, identify his source of LSD and get a conviction on him; we identified his source of amphetamine, and we're in trial on that, so we took out the retail side of the house as well as the wholesale side of the house, sir".

¶14. Sullivan does not address the procedural bar that exists because defense counsel failed to object to the either the question or the answer. Unfortunately, for Sullivan the rule is that a failure to object bars Sullivan from raising the issue on appeal. Defense counsel did not act until a jury break, at which time he asked the court to grant a mistrial in light of the information. The court refused to grant a mistrial, informed the defense counsel that he would have recognized an objection if one had been made, and offered to instruct the jury to disregard the statement. The defense refused the instruction, claiming that it would draw attention to the guilty verdicts. Given Sullivan's failure to object and his refusal to accept a jury instruction, he cannot argue

that the court did not recognize the his right to object to the statement. However, Sullivan does not allege that the statement prevented him from receiving a fundamentally fair trial, and the magnitude of the potential harmfulness of the statement was not so great that it was clearly detrimental to the impartiality of the jury. Therefore, this issue is without merit.

### IV. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A MISTRIAL AFTER THE ASSISTANT DISTRICT ATTORNEY CALLED THE DEFENDANT A "DANGER TO SOCIETY"?

¶15. Sullivan alleges that Assistant District Attorney Robert Helfrich prejudiced the jury against him when he referred to him as a "danger to society." As discussed in the previous issue, the trial court has discretion in determining whether the inflammatory or prejudicial nature of the prosecutor's statement is significant enough to warrant granting the defendant's motion for a mistrial. *See **Hoops**, 681 So. 2d at 528*. Sullivan relies on two cases addressing the issue of prosecutorial discretion; however, neither of these cases are very similar in fact to the situation in the case at bar. First, Sullivan cites ***Griffin v. State***, 557 So. 2d 542 (Miss. 1990), in which this Court concluded that the prosecutor's "name-calling, gratuitous insult and unnecessary inflammatory comment, repeated expressions of outrage. . ." prevented the jury from rendering an unbiased decision. In ***Griffin***, this Court emphasized the cumulative effect of several improper acts and very clearly viewed the incidents in the aggregate. *See **id**.* at 553. The other case on which Sullivan relies is ***Ruttley v. State***[(2)], in which the prosecutor brought the victim's severed hands in a jar into the courtroom. No. 97-KA-000783-COA 1998, WL 881793 (Miss. Ct. App. December 18, 1998). The alleged prosecutorial misconduct in this case is not nearly as severe as that in ***Ruttley***, and the evaluation of prejudice is a question of severity. *See **Hoops**, 681 So. 2d at 528.*

¶16. There is no precedent supporting the Sullivan's claim that a single inappropriate statement by the prosecutor is grounds for a new trial. The defense attorney objected to the statement-"you're a danger to society"-and the judge sustained the objection and instructed the jury to disregard the statement. The trial court followed the accepted procedure for addressing such a statement with the jury. *See **Hoops***, 681 So. 2d at 528. This issue is without merit.

### V. DID THE TRIAL COURT ERR IN ALLOWING RE-CROSS EXAMINATION OF THE DEFENDANT, WHEN THE DEFENDANT ARGUES THAT THE QUESTIONS WERE OUTSIDE THE SCOPE OF THE RE-DIRECT QUESTIONING?

¶17. Mississippi has adopted the Corpus Juris Secundum standard for re-cross examination of witnesses: "It is proper to exclude questions as to matters which were not opened up or brought out on redirect examination, or as to matters already fully covered or discussed at length on cross-examination, where there is no claim of oversight and no reason stated why the matter was not inquired into on the cross-examination proper."***Hubbard v. State***, 437 So. 2d 430, 434 (Miss. 1983) (quoting 98 C.J.S. *Witnesses* § 429). In this case, Sullivan does not allege that he was deprived of his constitutional right to confront witnesses testifying against him. That right is protected by both constitutional and case law. *See **Shaffer v. State**, 740 So. 2d 273 (Miss. 1998)* (citing ***Hamburg v. State***, 248 So. 2d 430, 434 (Miss. 1971). Here, Sullivan alleges only that the trial court's error in allowing re-cross examination that was too broad led directly to the District Attorney's error calling the Sullivan a "danger to society."

¶18. During redirect questioning the defense counsel asked Sullivan if he knew "whether or not the State of Mississippi tried to revoke that bond." During re-cross examination the prosecutor asked Sullivan, "The

motion to revoke your bond, you know why we filed that, don't you?" Both questions pertained to the same action by the State. Sullivan cannot reasonably allege that the question asked during re-cross examination was not related to the dialogue of the re-direct questioning. This issue is also without merit.

### VI. DID THE TRIAL COURT ERR IN REFUSING TO GRANT CIRCUMSTANTIAL EVIDENCE INSTRUCTIONS PROPOSED BY THE DEFENDANT?

¶19. At the objection of the district attorney, the trial court altered Sullivan's suggested Jury Instructions D-3, D-4, D-5, D-10, D-11, and D-12, by removing all circumstantial evidence language. Specifically, four of the instructions made reference to the State proving beyond a reasonable doubt "and to the exclusion of every reasonable hypothesis consistent with innocence," and the court struck that phrase in each of the instructions. One other instruction used the same phrase when defining the duty to find Sullivan not guilty, and the final refused instruction contained that same phraseology two additional times.

¶20. The well-established rule of this Court is that when the collection of admitted evidence is either direct evidence, or a combination of both direct and circumstantial evidence, circumstantial evidence jury instructions are not necessary. *See Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992); *King v. State*, 580 So. 2d 1182, 1191 (Miss. 1991). The evidence must be wholly circumstantial to warrant a circumstantial evidence instruction. *See Windham v. State*, 602 So. 2d 798, 800 (Miss. 1992).

¶21. It is possible to view the facts of this case as a mixture of direct and circumstantial evidence. There is direct evidence contained in Sarah Bradley's testimony. She went with Karlton Bradley to Simpson County, she discussed with Karlton the purpose of those trips, she watched Karlton meet with Sullivan and pick up the newspaper containing the amphetamine. Simone Reeves testified about her relationship with Karlton Bradley and the fact that he obtained amphetamine for her. Even Sullivan acknowledges that he was involved in drug activity with Karlton Bradley, and there are audio tapes confirming that their relationship existed and that they exchanged drugs. The existence of any direct evidence eliminates the need for a circumstantial evidence instruction. Thus, this issue is likewise without merit.

### VII. DID THE TRIAL COURT ERR IN REFUSING TO GRANT DEFENDANT'S PROPOSED JURY INSTRUCTION D-14?

¶22. Next, Sullivan alleges that the trial court erred in refusing to grant Jury Instruction D-14, a hearsay instruction telling the jury to disregard the testimony of Sarah Bradley. Sullivan cites as his authority *Melton v. State*, 723 So. 2d 1156 (Miss. 1998), in which a hearsay instruction was given to the jury. However, this issue is closely related to those hearsay issues already discussed. In *Melton* the trial judge determined that the testimony in question was hearsay and, because of that, ruled that hearsay instructions were necessary so that the jury would not be impacted by the hearsay testimony. *Melton*, 723 So. 2d at 1161.

¶23. In this case, the trial court had already heard Sullivan's motion for a new trial on the basis of the hearsay testimony and had already ruled that the testimony fell within the co-conspirator exception to the hearsay rule. Therefore, it is obvious that he would not give a hearsay instruction to the jury. This issue is likewise without merit.

### VIII. DID THE TRIAL COURT ERR IN REFUSING TO GRANT DEFENDANT'S MOTION FOR A NEW TRIAL AND MOTIONS FOR A DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, AND JURY INSTRUCTION D-7?

¶24. The standard of review is the same for both directed verdicts and judgments notwithstanding the verdict. *Gleeton v. State*, 716 So. 2d 1083, 1087 (Miss. 1998). This Court has set forth the standard as follows:

> Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.

*Ashford v. State*, 583 So. 2d 1279, 1281 (Miss. 1991).

¶25. The motion for a new trial, however, is a different animal. *May v. State*, 460 So. 2d 778, 781 (Miss. 1984). As distinguished from a motion for directed verdict or a motion for judgment notwithstanding the verdict, a motion for a new trial asks that the jury's guilty verdict be vacated on grounds related to the weight, not sufficiency, of evidence. *Id.* "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand, would be to sanction an unconscionable injustice." *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983). Furthermore, "the Supreme Court will reverse the lower court's denial of a motion for new trial only if, by denying, the court abused its discretion." *Gleeton* at 1088.

¶26. We find that the trial court correctly denied Sullivan's motion for directed verdict, motion for judgment notwithstanding the verdict, and motion for new trial. Regarding the motions for directed verdict and judgment notwithstanding the verdict, it can hardly be said that no reasonable, hypothetical juror could find beyond a reasonable doubt that Sullivan is guilty. In fact, not only could a reasonable juror find beyond a reasonable doubt that Sullivan is guilty, the ample evidence in support of Sullivan's conviction demands that we affirm the trial court's denials of Sullivan's motion for new trial as well.

¶27. Sullivan argues that the State failed to prove that he sold amphetamine to Simone Reeves. Sullivan relies only on the fact that Simone Reeves testified that she did not purchase amphetamine directly from Sullivan and that she did not know him. Sullivan's argument is misplaced. First, the State is not required to prove that the seller of a controlled substance personally placed the substance in the hands of the buyer or even knew the buyer prior to the sale. Sullivan was charged with the sale of a controlled substance in violation of Miss. Code Ann. § 41-29-139(a)(1) (Supp. 1993), which requires that the State prove only that Sullivan knowingly or intentionally transferred a controlled substance. The jury was instructed, and properly so, that a person who consents to the commission of a crime and knowingly does an act which aids, assists or encourages that crime, or does any act which leads to its commission, is tried as a principal. *Berry v. State*, 728 So. 2d 568, 570 (Miss. 1999). The jury was instructed that if it found that Karlton Bradley sold amphetamine to Simone Reeves and that Sullivan did any act which led to or assisted in that sale of amphetamine to Simone Reeves, then Sullivan is guilty of the sale of amphetamine. (Instruction S-4).

¶28. Second, there is ample evidence in the record to support the jury's conclusion that Karlton Bradley did, in fact, sell amphetamine to Simone Reeves and that Sullivan knowingly assisted in that crime. Simone Reeves, an undercover agent for the Mississippi Bureau of Narcotics, testified that she spoke with Karlton Bradley on both May 29, 1996, and June 13, 1996, about the possibility of purchasing two ounces of crystal methamphetamine. The State introduced telephone conversations between Karlton Bradley and Sullivan, obtained by the State pursuant to a court-ordered wire tap. The telephone conversations occurred on May 29, 1996, and June 13, 1996. The conversation of May 29, 1996, introduced as exhibit 3(b)(1),

took place at 3:46 p.m. In that conversation, Karlton Bradley stated, "Well, I just talked to somebody that said, uh, they wanted two of those." Sullivan replied, "Oh, when." Bradley said, "I'm thinking today. I just paged them. When they page me back, I'll let you know." Simone Reeves testified that she received a page from Karlton Bradley at 3:48 p.m. In conversation of June 13, 1996, introduced as exhibit 5(b)(1), Karlton Bradley stated, ". . . if I need to come see you anyway, uh, uh, to pick up, uh, those, uh, two units I picked up. . . ."

¶29. Tony Shelbourn, a former agent with the Bureau of Narcotics who worked on the case, testified that he interpreted the phrases "two of those" and "two units" to be references to the two ounces of methamphetamine Simone Reeves requested and ultimately purchased from Karlton Bradley. Sarah Bradley, wife of Karlton Bradley, testified that the telephone conversations dealt with drug transactions and that the transactions discussed occurred on May 29, 1996, and June 13, 1996. Sullivan gave a differing interpretation of the statements made during the course of the conversations. It is certainly within the province of the trier of fact to weigh the credibility of the witnesses and to accept some testimony while rejecting other testimony. *McFadden v. Mississippi State Bd. of Medical Licensure*, 735 So. 2d 145, 152 (Miss.1999). This Court will not substitute its judgment for that of the fact finder as to credibility issues. *Id.*

¶30. Highly supportive of the jury's verdict is the testimony of Sarah Bradley. She testified that Karlton Bradley told her he was going to purchase methamphetamine from Thomas Sullivan for Simone Reeves. Sarah Bradley stated that on May 29, 1996, she and her husband drove close to Sullivan's house and that Karlton Bradley got out of their car and into Sullivan's truck with Sullivan. She stated that when her husband came back to the car, he told her there was a newspaper on the side of the road that had crystal methamphetamine wrapped inside. Sarah Bradley testified that the couple stopped on the side of the road and retrieved the newspaper. She stated that this spot was only three feet from Sullivan's truck. Simone Reeves testified that she purchased the methamphetamine at the Bradley's home that evening.

¶31. Sarah Bradley testified that the same scenario occurred on June 13, 1996, and that, as they were driving off from the exchange, a police officer pulled Sullivan over. Officer Randy Crawford with the Simpson County Sheriff's Department identified Sullivan in court as the man he had pulled over on June 13, 1996. Simone Reeves testified that she purchased the methamphetamine from Karlton Bradley at his home on the evening of June 13, 1996.

¶32. Based upon this evidence, we decline to reverse the trial court's denial of Sullivan's motions for directed verdict, for judgment notwithstanding the verdict and for a new trial. There was ample evidence upon which the jury could reasonably base its guilty verdict. Based upon the same rationale, we refuse to hold that the trial court erred in denying instruction D-7 under which the court would have instructed the jury to find that Sullivan is not guilty of the sale of amphetamine.

### IX. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY TO CONTINUE ITS DELIBERATIONS WHEN ONE JUROR STATED THAT THE JURORS WERE "HOPELESSLY DEADLOCKED"?

¶33. Sullivan's first claim arises from the trial court's duty to submit jury instructions to the attorneys of both parties so that the attorney may object to the instructions before they are given. *See Edlin v. State*, 523 So. 2d 42, 44 (Miss. 1988). In *Edlin*, the attorneys did not have an opportunity to object to the trial judge's instruction to the jury to continue its deliberations; this instruction from the trial judge came after the

jury had heard the bailiff make a comment to hurry them to a faster verdict. *See id.* At the same time, *Edlin* also affirms the validity of the *Sharplin* instruction, which is Sullivan's primary objection on this issue. *Sharplin* allows a trial court judge to continue the jury's deliberations if he or she feels there is a reasonable possibility that the jurors will reach an agreement. *See Sharplin v. State*, 330 So. 2d 591, 596 (Miss. 1976).

¶34. Sullivan alleges that the trial court erred in sending the jurors to continue deliberating the conspiracy charge when the jury foreman said that they were deadlocked. However, the record indicates that two other jurors shook their heads in disagreement with jury foreman's perception of the progress of the deliberations. Additionally, after hearing from the jury foreman, the trial court judge sent the jurors in for fifteen additional minutes of deliberations, at which time they returned with a verdict. The trial court placed no pressure on the jury to return a verdict; he sent them to deliberate for fifteen more minutes. When he asked them to continue deliberations, he gave them a *Sharplin* instruction, telling them "to deliberate in view of reaching agreement, if you can do so, without violence to your individual judgment. . . do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict." The instruction the court gave to the jurors was a proper one which resulted in a verdict being reached by the jury. This issue is without merit.

### X. WAS THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS PREJUDICIAL TO THE DEFENDANT?

¶35. Sullivan does not raise a legitimate claim for review under this issue in his brief. The brief merely summarizes the issues raised in the preceding arguments and claims that viewing them in the aggregate produces a clearly unjust result against the him. He cites no authority in his brief to validate his suggestion that, even though each of the claims alone might not indicate reversible error, the sum total does create that error. This issue is without merit.

### XI. DID THE TRIAL COURT ERR IN IMPOSING A SENTENCE THAT WAS DISPROPORTIONATE TO THE CRIME ITSELF AND TO THE SENTENCES OF SIMILARLY SITUATED DEFENDANTS?

¶36. Generally, sentencing is within the discretion of the trial court and is not subject to appellate review. *See Hoops v. State*, 681 So. 2d 521, 537-38 (citing *Reynolds v. State*, 585 So. 2d 753, 756 (Miss. 1991)). When this Court does perform a proportionality review, it follows the guidelines set out by the U.S. Supreme Court. *See Gibson v. State*, 731 So. 2d 1087, 1097 (Miss. 1998) (citing *Solem v. Helm*, 463 U.S. 277, 292 (1983)). The first factor to be taken into consideration is "gravity of the offense and harshness of the penalty." *Gibson*, 731 So. 2d at 1097. One means of evaluating the severity of the sentence is to consider it in relation to the maximum penalty for the same crime that is set out by statute; this Court will generally not grant a proportionality review for a sentence that is within the bounds established by the legislature. *See id.* Sullivan argues that comparing the sentence he received with that of Karlton Bradley shows that he was penalized for exercising his right to trial by jury. However, Sullivan relies on a case in which "the circuit judge may have had an excellent reason for McGilvery's sentence which had not been articulated." *McGilvery v. State*, 497 So. 2d 67 (Miss. 1986).

¶37. In this case the trial court judge made his intent known and stated on the record his reasons for imposing a heavy sentence on Sullivan:

The defendant is not being penalized for going to trial, Mr. Klein. The Court is very aware that Mr. Sullivan, after being charged in this case, absented himself from the jurisdiction of the Court for some months. Also the Court is very aware of the fact that after he was apprehended, he made bond two days later in the amount of $150,000. . . . The Court is well aware of the fact that he absented himself and was finally apprehended in Memphis, Tennessee almost a year later, and at the time he was apprehended in the state of Tennessee, instead of submitting to arrest, he attempted to escape them and hurt himself jumping over a fence and falling about 15 feet on the concrete. I'm also aware that at the time he was apprehended in Memphis, he had in his possession amphetamine, and he specifically testified in Court that he did not use amphetamine, that he used cocaine, so that leads to only one conclusion in the Court's min, and I don't think that the sentence that the Court has placed upon him is in any way unfair, considering all the facts in this case. The motion will be overruled.

The trial court states that, if this punishment is harsh, it is because it is linked to his past behavior, not to his decision to ask for a jury trial. Therefore, Sullivan is not being penalized for exercising his constitutional right to a jury trial.

## CONCLUSION

¶38. For the reasons set out above, Sullivan's conviction and sentence are affirmed.

¶39. **COUNT I: CONVICTION OF CONSPIRACY AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE IN THE AMOUNT OF $25,000 AFFIRMED. COUNT II: CONVICTION OF SALE OF AMPHETAMINE AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE IN THE AMOUNT OF $25,000 AND COURT COSTS AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVE WITH THE SENTENCE IN COUNT I.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. PITTMAN, P.J., NOT PARTICIPATING.**

1. Sullivan's issues I, II, III, and IV are contained with Issue I of this opinion.

2. Sullivan erroneously cites to *Ruttley*. The correct cite for this issue is *Hickson v. State*, 472 So. 2d 379 (Miss. 1985).