BARNES, J., for the Court.
¶ 1. Walter Smith was convicted of manslaughter on August 5, 2004, in the Circuit Court of Tallahatchie County. He was found to be a habitual offender, and was therefore sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections without the possibility of parole. Smith appeals arguing that the evidence introduced at trial weighed so heavily in his favor that the trial court should have directed a verdict of not guilty of manslaughter. In the event that we do not render his verdict, Smith posits that he is at least entitled to a mistrial because of a statement which the prosecution published to the jury which Smith claims was not in evidence. Finding his arguments to be without merit, we affirm the verdict.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On November 24, 2002, Betty Evans was in her home in Goose Pond, Mississippi. Evans testified that, in the early morning hours while it was still dark, her former boyfriend, Courtney Bradley, made a forcible entry through a window into her home. Bradley and Evans then began arguing. Some time later, Evans’s then-current boyfriend, Walter Smith, arrived at the apartment. Evans testified that Walter proceeded directly to the bedroom. According to Evans, the altercation between her and Bradley became violent, and Bradley began to abuse her physically. Specifically, she claimed that Bradley choked her, leaving marks which she claimed were visible on her neck, and that Bradley struck her so hard in the face that he fractured her jaw. Evans and other defense witnesses testified that Bradley had a history of abusing Evans, and that she had been hospitalized in the past due to injuries she sustained at his hands.
¶ 3. Evans testified that, when she cried out for Smith to help her, he returned to the living room, exchanged words with Bradley, drew a .380 caliber pistol, and shot Bradley one time in the chest. Bradley fell to the ground and bled to death. Evans stated that the gunshot occurred at approximately 3:30 or 4:00 a.m. In a statement made to police, when asked why he shot Bradley, Smith said, “I [had] just been released from the hospital back in August. I had asthma and other problems also, and by me, you know what I’m saying, got my problems, I just got nervous. I just shot him because I didn’t feel like rassling or tussling. I could have lost my life.”[1] In his statement, Smith also claimed that he fired as a reflexive action because he saw Bradley reach into his jacket and believed him to be reaching for a gun. However, investigating officers found neither a firearm nor a jacket at the scene of the shooting. Bradley’s pockets were pulled completely out, and the police were unable to locate the empty cartridge from the fired round that killed Bradley. Evans stated that she saw Bradley reach into his pants or shirt, as if he was reaching for a gun. The evidence was uneontested that the living room was dark because Evans had failed to pay her electrical bills, and the power was shut off.
¶ 4. Evans testified that she called the authorities shortly after the shooting occurred, although the prosecution countered that there was no record of this call ever *417 being received. Evans stated that she and Bradley then went to the home of a neighbor, Vincent Noland. Smith told Noland that he shot Bradley and, according to Noland, Smith then asked Noland to help him dispose of the body. Noland testified that he convinced Smith and Evans to contact the authorities and not attempt to dispose of the body. Officer Jimmy Gibbs of the Tallahatchie County Sheriffs Department testified that he received a call from Noland at approximately 5:00 or 5:30 a.m., and that he drove to Evans’s house. Officer Allen Meek, the investigator for the Tallahatchie County Sheriffs Department, arrived at the scene shortly thereafter. Officer Meek testified that he arrived at the scene under the belief that a burglary occurred and that he proceeded with his investigation under this assumption.
¶5. When the officers arrived at the scene, Smith was not present. Evans was present, however, and the officers were able to observe her demeanor and appearance, and photograph her. The testimony regarding Evans’s appearance and demeanor was conflicting. Evans claimed that she was very upset over the incident and that there were visible bruises on her face. She also stated that there was a noticeable red mark on her neck because Bradley had choked her. The officers testified that Evans was not distraught when they questioned her, and that she did not appear to have been beaten.[2] Defense witnesses testified that Evans went to the doctor several days after the incident and discovered that her jaw was broken. The witnesses claimed that the doctor wired Evans’s jaw shut and that she was forced to eat through a straw until the injury healed. Evans claimed that Bradley had beaten her with his hands; however, Dr. Stephen Hayne, who performed an autopsy on Bradley following the incident, found that there were no marks on Bradley’s hands which would have been consistent with his hitting another person.
¶ 6. The officers who examined the scene testified that clothes were scattered about Evans’s room, giving the appearance of a burglary. Evans initially made no statement regarding the scattered clothing. Later she claimed that she had scattered the clothing because she was “mad.” During the trial she testified that she had scattered the clothes because she was sorting through her clothing. A window was left open in the apartment, with a footprint outside the window. However, the footprint did not match the shoes that Bradley was wearing on the night of his death. The investigating officers also found evidence that the carpet had been cut around Bradley’s body. When Evans testified regarding the events that had transpired on the night in question, her recollection of the positioning of the parties in the living room and the time frame of events materially differed from previous statements she had made regarding the events of that night.
¶ 7. Smith surrendered himself to a relative, Clifton Bailey, who was a constable in a nearby district. He also gave the weapon that was used in the shooting to his mother, who turned the weapon in to authorities. A grand jury indicted Smith on the charge of murder on July 81, 2003. The indictment was later amended so that Smith could be sentenced as a habitual offender if found guilty. A jury trial was held beginning on August 2, 2004, and Smith was found guilty of manslaughter on August 5, 2004. He was sentenced as a habitual offender to a term of twenty years *418 without parole in the custody of the Mississippi Department of Corrections. Smith presented the theory at trial that he shot Bradley in self-defense. On appeal, Smith challenges the weight and sufficiency of the evidence presented to the jury, and further claims that an action taken by the prosecution during closing arguments was so prejudicial as to require a mistrial.
ISSUES AND ANALYSIS
I. Whether the evidence was sufficient to sustain the verdict of manslaughter.
¶ 8. Challenging the sufficiency of the evidence to sustain the verdict, Smith appeals the trial court’s refusal to grant him a peremptory instruction and/or a judgment notwithstanding the verdict. The Mississippi Supreme Court has stated the test for sufficiency of the evidence as follows:
[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” However, this inquiry does not require a court to ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979)).
¶ 9. The elements of manslaughter are contained in Mississippi Code Annotated section 97-3-35, which defines the crime as “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.” The question, then, is whether the evidence presented at trial, when viewed in the light most favorable to the prosecution, is sufficient to sustain each of these elements. We find that the elements are well-supported by the evidence.
¶ 10. The evidence was conclusive and undisputed that Bradley was killed by the use of a dangerous weapon, a pistol, in the instant case. Also, both the State and the defense presented evidence that an argument took place before the shooting occurred, which would support the element of “in the heat of passion.” The question, then, was whether Smith killed Bradley in necessary self-defense. The State presented evidence that Smith shot Bradley as a matter of convenience, and that he and Evans attempted to cover-up the shooting.
¶ 11. First, there was the statement of Smith that “I just shot [Bradley] because I didn’t feel like rassling or tussling.” Second, there was conflicting information of whether Bradley made a motion which would make him appear to be grabbing a gun. The police found no firearm on Bradley when they arrived at the scene. Smith stated that he saw Bradley reach into his “jacket” when he shot him; however, the police did not find a jacket on Bradley.
¶ 12. Third, there was significant evidence that Evans and Smith attempted to cover up the shooting. Our Court has *419 noted a checklist of circumstantial evidence which is sufficient to sustain a jury verdict, and one factor in the checklist is evidence which shows “an attempt at concealment or any other evidence of guilty knowledge.” O’Neal v. State, 840 So.2d 750, 753(¶ 11) (Miss.Ct.App.2003) (citing Shields v. State, 702 So.2d 380, 383 (Miss.1997)). Testimony was presented that Smith had asked Nolan to allow him to use Nolan’s car to dispose of the body, and that Nolan convinced Smith not to cover up the incident but instead to report the shooting to authorities. Testimony indicated that Evans and Smith waited several hours to report the shooting, and that Bradley did not die immediately, but rather bled to death on the floor. The investigating officers who testified at trial stated that the incident was initially reported to them as a burglary, and that Evans did not initially indicate that she knew the identity of the dead man in her house. The officers also found an open window in the house, with a footprint in the mud underneath the window. The footprint did not match the shoes of the victim. Clothes were strewn about Evans’s room, indicating that she had herself scattered the clothes to give the appearance that her home had been burglarized. Evidence was introduced that the carpet had been cut around the body of Bradley, and that his pockets had been completely pulled out as if he had been searched. No shell casing was found for the bullet that killed Bradley, suggesting that Evans or Smith had located the casing and concealed it. Smith fled the scene of the incident, and later surrendered himself to a family member. The investigating officers stated that Evans did not appear to be distraught at the scene, and that she did not appear to have been beaten.
¶ 13. Further, the State impeached Evans on cross-examination and was able to call into question her reliability as a witness. She substantially changed her explanation for the scattering of the clothes in her room, and at trial she was unable to place the locations of the involved parties when the shooting incident occurred. She also admitted at trial that she had lied to investigating officers about her whereabouts on the night in question. In a previous statement, she told investigating officers that she had gone to a club earlier in the night to meet Bradley, but at trial she admitted that she had been home the entire evening.
¶ 14. Taken together, and viewed in the light most favorable to the prosecution, the forgoing evidence is sufficient to show that Smith’s actions were not in necessary self-defense, thereby sustaining a verdict of manslaughter. Smith argues, however, that the version of events espoused by Evans “must be accepted as true” under the well-known Weathersby rule, which states: “where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.” Weathersby v. State, 165 Miss. 207, 209,147 So. 481, 482 (1933). While certain aspects of Evans’s story appear reasonable, we do not find the Weathersby rule to be applicable to the instant case. The substantial physical evidence, along with the statements made by Smith to investigators and to Noland, contradict Evans’s version of events in several respects.
¶ 15. Evans’s statements were inconsistent, and her version of the events tended to vary. She was unable to note the positions of the parties in her living room when the incident occurred. She was unable to explain the cut marks in the carpet around Bradley’s body which were visible *420 in a photograph which was introduced into evidence. Her claim that she had been beaten was contradicted by the testimony of the investigating officers who testified that she appeared not to be distressed and that she did not appear to have been beaten when they observed her following the incident. Her claim that she quickly reported the incident to the authorities, but that no police officers were available to come to the scene of the incident, was contradicted by the statement of officers that there was no record of her call, and that the person who initially reported the incident was Nolan, not Evans.
¶ 16. We find that the Weathersby rule is inapplicable here, and the evidence is sufficient to sustain the verdict.
II. Whether the verdict was against the overwhelming weight of the evidence.
¶ 17. Since the evidence is sufficient to sustain the verdict, we next turn to Smith’s challenge to the weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844(¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). The appellate court sits as a hypothetical “thirteenth juror.” Id. As such, the Court weighs the evidence “in the light most favorable to the verdict.” Id. If, in this position, the Court finds that the verdict of the jury would amount to an unconscionable justice, “the proper remedy is to grant a new trial.” Id. But, “[t]his difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves.” Id. at (¶ 14).
¶ 18. We find that the evidence presented at trial was not overwhelmingly in Smith’s favor, and allowing the verdict to stand does not sanction an unconscionable justice. When viewed in the light most favorable to the verdict, we find that there is significant evidence on which the jury could have found that Smith did not shoot Bradley in necessary self-defense. First, there is direct and circumstantial evidence which contradicts the defense’s version of the incident. This includes the fact no gun was found on Bradley, and no jacket was found on Bradley which would confirm Smith’s statement that he shot Bradley when Bradley reached into his jacket. There was also the admission by Smith that he shot Bradley merely because he did not want to “tussle” when an argument broke out between the two.
¶ 19. Second, there is substantial evidence that Smith and Evans attempted to cover up the shooting. If Smith had lawfully shot Bradley in self-defense, the jury could have reasoned that he would have immediately contacted the authorities and would have been on the premises to explain the events when the authorities arrived. Instead, the prosecution introduced evidence that Bradley’s pockets had been emptied and pulled out, that no shell casing was found on the scene, that the rug had been cut around Bradley’s body, that Smith and Evans had delayed several hours before contacting the authorities, that Smith had told Noland to help him hide the body, that Noland was the first to contact the authorities, that clothes had been strewn about Evans’s room, and that a window had been left open in the house. From this evidence, the jury could find that Smith and Evans had attempted to cover up the shooting, and could then reasonably infer from these facts that the shooting had not been lawful and that Smith was well aware of this fact.
¶ 20. Smith argues that “Smith’s statements coupled with those of Betty Evans wholly support the self-defense claim.” *421 We agree that this is true. Evidence was presented at trial which supports the defense version of the shooting. Smith stated, on two different occasions when questioned by police, that he shot Bradley because he feared for his life. Evans stated that Bradley beat her severely, and that he was beating Evans and was about to turn on Smith when the shooting occurred. Family members testified that Evans’s jaw had been broken, and that it had to be wired shut by a doctor only a few days after the shooting incident occurred. Smith, in his statement, and Evans, in her testimony, stated that Bradley reached for something when he was shot by Smith. Although Smith testified that Bradley reached inside a jacket, Evans testified that Bradley reached into his pants or shirt as if he was going to pull a gun.
¶ 21. However, on appeal, “[i]t is not our function to determine whose testimony to believe.” Taylor, 744 So.2d at 312(1117) (Miss.1999). “We will not disturb a jury’s finding on conflicting testimony where there is substantial evidence to support the verdict.” Id. We must also bear in mind our standard of review in this instance, which is that we must view the evidence in the light most favorable to the verdict. The jury in the instant case was presented with two conflicting versions of the events that transpired, and found that Smith had shot Bradley in the heat of passion, as opposed to necessary self-defense. Based on the evidence, the decision of the jury is not against the overwhelming weight of the evidence, and it is not in our province to disturb the verdict.
III. Whether the trial court erred in denying a motion for a mistrial based upon alleged prosecutorial misconduct.
¶ 22. During its closing argument, the prosecution placed on an overhead projector a piece of paper which contained a quote from the defendant that he had shot Bradley because he did not want to fight with him. The jury viewed the quote for approximately three or four seconds before it was removed. Counsel for Smith immediately made a motion for a mistrial, which was denied. On appeal Smith argues that the document should not have been viewed by the jury because it was not in evidence. Further, Smith argues that the statement was prejudicial and inflammatory because only part of the statement was revealed to the jury. Smith’s entire statement was that he shot Bradley because he did not feel like fighting with him, and that he could have lost his life. The prosecution omitted the part of the statement wherein Smith stated that he believed he could have lost his life if he had not shot Bradley.
¶ 28. “The decision to grant a mistrial because of potentially damaging statements is left to the discretion of the trial judge, and the trial judge must grant a mistrial if he believes that certain testimony is so damaging that his instructions to the jury could not adequately temper the testimony’s effects.” Sullivan v. State, 749 So.2d 983, 990 (¶ 12) (Miss.1999) (citing Hoops v. State, 681 So.2d 521, 528 (Miss.1996)). “[A] trial judge may alleviate the potential damage of such kinds of testimony by addressing the statement with the jury.” Id. (citing Hoops, 681 So.2d at 528). This Court has held that the trial court’s instruction to the jury to disregard such testimony is sufficient to prevent prejudice. Id. (citing Baine v. State, 604 So.2d 249, 257 (Miss.1992); Dennis v. State, 555 So.2d 679, 682-83 (Miss.1989)). The court in Sullivan also found that there was no precedent supporting the argument that a single inappropriate comment by a prose *422 cutor would be grounds for reversal. Id. at 991(1116).
¶ 24. In the instant case, when the prosecution displayed the excerpt from the defendant’s statement on the overhead projector, the trial judge informed the jury “[t]hat is not an item of evidence and it’s a quote from the testimony.” Outside the presence of the jury, the trial judge later explained his reasoning for overruling the defense motion for a mistrial, noting that the statement was only visible to the jury for three or four seconds, and also stating, “I believe I did instruct the jury that that was not an exhibit but was a quote from the testimony and I think that adequately instructs the jury.”
¶ 25. We find that the trial judge did not abuse his discretion in denying the motion for mistrial. Although the piece of paper observed by the jury was not in evidence, the statement it contained was a statement made by the defendant which was in evidence. The statement was only visible on the overhead projector for a few seconds. It is true that the prosecution only used part of the defendant’s statement, however, Smith neglects to point out that his counsel only used part of the statement during closing arguments as well. Smith’s counsel paraphrased his statement, repeating only the words “I feared for my life.” He made no mention of that part of the statement wherein Smith claimed that he shot Bradley because he did not want to fight, or “tussle.”
¶ 26. This being the case, the trial judge was within his discretion to deny the motion, and we find his instruction to the jury adequate to alleviate any damage to Smith.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF TALLAHATCHIE COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TALLAHATCHIE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.

. Smith made a statement to the police during the investigation of the incident, but did not testify on his own behalf at trial.

. A photograph introduced at trial appeared to show a mark on Evans’s neck. However, it was unclear whether the mark was actually an injury to Evans, or whether it was simply a shadow which was evident because of the angle at which the photograph was taken.