LEE, C.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. A jury in the Humphreys County Circuit Court convicted Veshone Malone of Count I, conspiracy to commit robbery, and Count II, capital murder. On Count I, Malone was sentenced to serve five years in the custody of the Mississippi Department of Corrections (MDOC) and ordered to pay a $5,000 fíne. On Count II, Malone was sentenced to life without the possibility of parole and ordered to pay a $10,000 fíne. The sentence imposed in Count I was ordered to run consecutively to the sentence imposed in Count II.
 

 ¶ 2. Malone filed post-trial motions, which were denied. Malone now appeals, asserting the following issues: (1) the trial court failed to establish the existence of a conspiracy; (2) the trial court erred in allowing the introduction of autopsy and crime-scene photographs into evidence; (3) the trial court erred in allowing the jury to hear testimony of Mark Winstead and Robert Geoghegan; (4) the trial court erred in striking language from two jury instructions; (5) the jury’s verdict is contrary to the overwhelming weight of the evidence; and (6) cumulative error requires reversal. Finding no error, we affirm.
 

 FACTS
 

 ¶ 3. In the early morning hours of May 14, 2007, Lee Andrew Smith shot and killed Clinton Chinn during a robbery at Chinn’s home in Silver City, Mississippi. Quincy Johnson was also present when Chinn was shot. Johnson was also armed with a gun, which he testified was given to him by Malone. Both Smith and Johnson testified that it was Malone’s plan to rob Chinn. Chinn owned a club located ap
 
 *1200
 
 proximately one hundred yards from his home. Malone thought Chinn would have money after closing the club. However, no money was found on Chinn.
 

 ¶4. Malone provided transportation, by dropping Smith and Johnson off near Chinn’s house and picking the two up after the robbery. Malone also supplied Smith and Johnson with a gun, a bat, a change of clothes for Smith, and directions to Chinn’s house.
 

 ¶ 5. Johnson stole Chinn’s checkbook, and after using a check to pay a bill, Johnson became a suspect in Chinn’s murder. Johnson implicated Smith and Malone. Both Smith and Johnson pleaded guilty to murder and received life sentences. Other pertinent facts will be discussed as necessary.
 

 DISCUSSION
 

 I. CONSPIRACY
 

 ¶ 6. In his first issue on appeal, Malone argues that the trial court erred in failing to establish the existence of a conspiracy prior to the testimony of Smith and Johnson. A statement is not hearsay if it is made “by a co-conspirator of a party during the course and in furtherance of the conspiracy.” M.R.E. 801(d)(2)(E). “However, before the statement of an alleged co-conspirator can be admitted as evidence, the trial court must determine that there is preliminary evidence of a conspiracy.”
 
 Sullivan v. State,
 
 749 So.2d 983, 988 (¶ 5) (Miss.1999). The record indicates that the trial court halted Smith’s testimony in order to determine whether there was evidence of a conspiracy before proceeding with any hearsay testimony regarding the conspiracy. Enunciating the facts which we have previously set forth in this opinion, the trial court found that there was evidence of a conspiracy.
 

 ¶ 7. Sitting as an appellate court, we review the record to determine whether a conspiracy has been established.
 
 Id.
 
 We find there was enough evidence from the testimonies of Smith and Johnson that a conspiracy existed. This issue is without merit.
 

 II. AUTOPSY AND CRIME-SCENE PHOTOGRAPHS
 

 ¶8. In his next issue on appeal, Malone argues that the trial court erred in allowing the introduction of autopsy and crime-scene photographs. Malone contends that these photographs were irrelevant and highly prejudicial. The photographs introduced into evidence include photographs of Chinn’s body at the crime scene and three photographs of Chinn taken during the autopsy. The trial court admitted the photographs, finding that the probative value was not outweighed by any prejudicial effect.
 

 ¶ 9. We apply the familiar abuse-of-discretion standard when reviewing whether a trial court erred in admitting photographs.
 
 Dampier v. State,
 
 973 So.2d 221, 230 (¶ 25) (Miss.2008). “A photograph, even if gruesome, grisly, unpleasant, or even inflammatory, may still be admissible if it has probative value and its introduction into evidence serves a meaningful evidentiary purpose.”
 
 Noe v. State,
 
 616 So.2d 298, 303 (Miss.1993). Photographs have evidentiary value when they: “(1) aid in describing the circumstances of the killing; (2) describe the location of the body and cause of death; (3) supplement or [clarify] witness testimony.”
 
 McIntosh v. State,
 
 917 So.2d 78, 84 (¶ 13) (Miss.2005) (quoting
 
 Spann v. State,
 
 771 So.2d 883, 895 (¶ 31) (Miss.2000)).
 

 ¶ 10. We cannot find that the trial court abused its discretion in allowing the photographs to be admitted. The photographs clarified the witnesses’ testimonies; aided
 
 *1201
 
 in describing the circumstances of Chinn’s death; and showed the location of the body, the cause of death, and the location of the bullet wound. This issue is without merit.
 

 III. TESTIMONIES OF WINSTEAD AND GEOGHEGAN
 

 ¶ 11. Malone’s next issue concerns the testimonies of Winstead and Geoghegan. Winstead, a radio-frequency performance manager for Cellular South, testified about maps showing the location of cell phone towers in the area and the site coverage areas. Geoghegan worked for Cellular South’s parent company, Telapex, Inc., as subpoena-compliance director; he testified in his capacity as the custodian of the cell phone records. These records showed the dates and times calls were made and the numbers of the calls that were made. Geoghegan explained the cell phone records, including what each column on the record represented.
 

 ¶ 12. Malone objected to their testimonies, contending that both witnesses’ testimonies contained information that was only appropriate for an expert witness. Neither witness was designated as an expert by the State. The State responded that the witnesses were going to discuss information which was kept in the normal course of business, including tower locations and cell phone records. The trial court overruled the objection, finding that the testimony would not require an expert to explain. The standard of review regarding the admission or exclusion of evidence is abuse of discretion.
 
 Wade v. State,
 
 583 So.2d 965, 967 (Miss.1991).
 

 ¶ 13. According to Rule 701 of the Mississippi Rules of Evidence, opinion testimony by a lay witness must be “(a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [testimony by experts].” Neither Winstead nor Geoghegan’s testimony was so complex or technical as to render it expert testimony. Both Winstead and Geoghegan testified as to records prepared in the course of regularly conducted business activity. Neither was testifying as an expert witness, instead they testified as a custodian of these particular records pursuant to Rule 808(6) of the Mississippi Rules of Evidence. Rule 803(6) provides that either the custodian of records, or any other qualified witness, may testify about business records and records of regularly conducted activity.
 

 ¶ 14. The State submitted a map from Cellular South containing cell-tower locations and coverage areas. Winstead simply explained where these cell-tower locations and coverage areas were located on the map. Winstead did testify as to what he thought was the distance between each cell tower, but he stated that he was unsure of the exact distance. Geoghegan testified as to the specific information provided in the cell phone records generated by Cellular South, including subscriber information, cell-tower usage, and detailed call information. Geoghegan’s testimony concerns information found only in the cell phone records. This issue is without merit.
 

 IV. JURY INSTRUCTIONS
 

 ¶ 15. In his next issue on appeal, Malone argues that it was error for the trial court to remove the phrase, “even though it may cause a mistrial,” from jury instructions D-4 and D-5. Malone contends that these instructions were taken from model jury instructions; thus, the phrase should not have been removed. The last sentence
 
 *1202
 
 from both proposed jury instructions D^i and D-5 stated: “If there is any juror who is not convinced beyond a reasonable doubt of the defendant’s guilt, it is your duty to vote ‘Not Guilty,’ even though it may cause a mistrial of this case.” The State noted that it had some objections to the language of these instructions, but Malone responded that they followed the model jury instructions. After an off-the-record discussion about all the proposed jury instructions, the trial court struck the last phrase from D-4 and D-5.
 

 ¶ 16. “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Johnson v. State,
 
 823 So.2d 582, 584 (¶ 4) (Miss.Ct.App.2002). In
 
 Williams v. State,
 
 5 So.3d 496, 509-10 (¶ 45) (Miss.Ct.App.2008), this Court found that this same phrase, “even though it may cause a mistrial in this case,” was unnecessary since the jurors had been properly instructed otherwise. After reviewing the instructions given to the jury as a whole, it is clear that the instructions fairly state the law and create no injustice. This issue is without merit.
 

 V. OVERWHELMING WEIGHT OF THE EVIDENCE
 

 ¶ 17. In his fifth issue on appeal, Malone argues that the verdict is contrary to the overwhelming weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005). Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence.
 
 Davis v. State,
 
 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
 

 ¶ 18. Upon our review of the record, we cannot find that the verdict is contrary to the overwhelming weight of the evidence. There was testimony from Malone’s co-conspirators that it was Malone’s idea to rob Chinn and that Malone provided transportation, a gun, a bat, clothes, and information about Chinn’s house. Malone’s cell phone records indicate that he was not with his girlfriend, Yakimba Claiborne, in Tchula, Mississippi, at the time Chinn was shot and killed. Rather, the calls made from Malone’s cell number originated from cell towers near Chinn’s home in Silver City. Furthermore, Claiborne testified that Malone asked her to provide him with an alibi for the night of Chinn’s murder. Claiborne testified that she told the investigating officers that she never saw Malone that night. Lennet-ta Nelson testified that Malone called her and asked her to provide an alibi for Johnson for the night of Chinn’s murder. Nelson testified that she refused Malone’s request.
 

 ¶ 19. The jury found the witnesses for the State more credible and resolved any conflicts in favor of the State. This issue is without merit.
 

 VI. CUMULATIVE ERROR
 

 ¶ 20. In his final issue on appeal, Malone argues that the cumulative error deprived him of his fundamental right to a fair trial. Finding that each of Malone’s arguments is without merit, we consequently do not find any cumulative error that would necessitate a reversal. This issue is without merit.
 

 
 *1203
 
 ¶ 21. THE JUDGMENT OF THE HUMPHREYS COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, CONSPIRACY TO COMMIT ROBBERY, AND SENTENCE OF FIVE YEARS AND TO PAY A $5,000 FINE, AND COUNT II, CAPITAL MURDER, AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE AND TO PAY A $10,000 FINE, WITH THE SENTENCE IN COUNT I TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.